1  Eric C.R. K'nAPP (#J10618)
   Salinas Valley State Prison
2  Post Office Box 1050
   Soledad, California 93960-1050
3
   In Propria Persona
4

5                                                    **FILED**

6                                              JAN 3 0 2008

7                                        RICHARD W. WIEKING
                                         CLERK, U.S. DISTRICT COURT
                                         NORTHERN DISTRICT OF CALIFORNIA
8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10  ERIC CHARLES RODNEY K'nAPP,

11  Plaintiff,
                                          **E-filing**
12  v.

13  James   TILTON,  Michael  S.  EVANS,
    ARCEO,  BACKLIN,  BALLESSA, BENNETT,    **(PR)**
14  BURK,  CANCHOLA,  CAPLAN,   CHRONES,
    CHURLESON,  CORE,  CRIZANT,   DOE-1,
15  DOE-2,  DOE-3,  DOE-4,  DOE-5,  DOE-6,   **CV 08        0719**
    DOE-7, FOX, FREESE, GODINEZ, GRANNIS,
16  GROUNDS,   HALL,   HEDGPETH,   HENLEY,   Case No.: _____
    HOLLAND,   HURDLE,   JANSEN,   JONES,
17  KNAPP,  KRENKE,  Charles LEE,  D. LEE,
    LEWIS, LOPEZ, MANUEL, MCCALL, MEDINA,
18  MELVIN,   MOSS,   NEGRON,    NEOTTI,
    NUCKLES,   OVERSTREET,   PENNINGTON,
19  PIMENTAL,   POWERS,   PRICE,    READ,
    REDDING,   ROJAS,   SALAZAR,   SOTELO,
20  STEVENSON,  SULLIVAN,  Matthew THOMAS,
    M.  THOMAS,   TREXLER,   VARIZ,   WALL,
21  WATSON, WELLS, and WOODFORD.

22  Defendants.
    _____/
23

24                           -oOo-

25        **Civil Rights Complaint by a Prisoner for Declaratory Relief,**
                **Injunctive Relief, and Monetary Damages.**
26
                             -oOo-
27

28

    _____
    Modified/Adapted Form Complaint

Table of Contents

Page

I.   INTRODUCTION                                                             1

II.  EXHAUSTION OF ADMINISTRATIVE REMEDIES                                    2

III. PARTIES                                                                 3

IV.  STATEMENT OF CLAIMS                                                     9

     Claim 1:  "ILLEGAL SEIZURE AND DEPRIVATION OF AUTHORIZED PERSONAL
               PROPERTY FROM INCOMING MAIL,"                                10

     Claim 2:  "OBSTRUCTION OF [PLAINTIFF'S] OUTGOING CONFIDENTIAL MAIL TO
               COURTS, ATTORNEYS, AND GOVERNMENT OFFICIALS"                 11

     Claim 3:  "[DENIAL OF] PLAINTIFF'S REQUEST FOR A REASONABLE AND
               NECESSARY DISABILITY ACCOMMODATION"                          12

     Claim 4:  "[OBSTRUCTION OF] PLAINTIFF'S DISABILITY ACCOMMODATION
               REQUEST"                                                     15

     Claim 5:  "OBSTRUCTION OF A STAFF COMPLAINT"                           16

     Claim 6:  "RETALIATORY DELAY AND NONDELIVERY OF INCOMING PERSONAL
               MAIL AND LEGAL PUBLICATIONS"                                 17

     Claim 7:  "[REPEATED] FORCED AND PAINFUL WITHDRAWAL FROM PRESCRIBED
               PSYCHIATRIC MEDICATION"                                      18

     Claim 8:  "RETALIATORY AND OTHERWISE UNLAWFUL DENIAL OF [PLAINTIFF'S]
               CONSORTIUM AND SOCIETY WITH HIS MOTHER"                      20

     Claim 9:  "RETALIATORY AND OTHERWISE UNREASONABLE SEIZURE AND
               DEPRIVATION OF AUTHORIZED PERSONAL PROPERTY FROM INCOMING
               MAIL"                                                        22

     Claim 10: "OBSTRUCTION OF A PROPERTY GRIEVANCE ... WHICH HAD A
               CHILLING EFFECT ON PLAINTIFF'S RIGHT TO FILE GRIEVANCES"     28

     Claim 11: "FOUR MONTHS WITHOUT PRESCRIBED MEDICATION"                  30

     Claim 12: "DENIAL OF [PLAINTIFF'S] CONFIDENTIAL MAIL RIGHTS UNDER
               STATE LAW"                                                   31

     Claim 13: "RETALIATORY DENIAL OF PRESCRIBED MEDICATION AND FALSIFIED
               DOCUMENTATION IN [PLAINTIFF'S] PERMANENT RECORD"             33

     Claim 14: "CONTINUOUS CAMPAIGN OF RETALIATORY OPPRESSION"              36

     Claim 15: "RETALIATORY DENIAL OF FEDERALLY MANDATED MINIMUM OUTDOOR
               EXERCISE TIME"                                               38

     Claim 16: "RETALIATORY FURTHER OBSTRUCTION OF OUTGOING CONFIDENTIAL
               MAIL"                                                        40

**Claim 17:** "[DENIAL OF] PLAINTIFF'S REQUEST FOR A REASONABLE AND NECESSARY DISABILITY ACCOMMODATION"                41

**Claim 18:** "[DENIAL OF] PLAINTIFF'S REQUEST FOR A REASONABLE AND NECESSARY DISABILITY ACCOMMODATION"                43

**Claim 19:** "RETALIATORY DENIAL OF PRIORITY ACCESS TO THE LAW LIBRARY AND DENIAL OF LEGAL COPIES REQUIRED BY COURT RULES"                46

**Claim 20:** "RETALIATORY AND OTHERWISE UNAUTHORIZED DENIAL OF FREE SPEECH, ASSOCIATION, ASSEMBLY, COMMUNITY, AND SOCIETY WITH OTHERS DURING VISITS"                48

**Claim 21:** "DENIAL OF ADEQUATE WARMTH THROUGH DENIAL OF AUTHORIZED CLOTHING AT VISITS"                52

**Claim 22:** "CAUSING AND/OR ALLOWING PLAINTIFF'S REQUESTS FOR REASONABLE AND NECESSARY DISABILITY ACCOMMODATIONS TO BE PROCESSED, REJECTED, REVIEWED, DENIED, EXCESSIVELY DELAYED, AND OTHERWISE MISHANDLED AND OBSTRUCTED IN VIOLATION OF THE CDCr'S ESTABLISHED DISABILITY GRIEVANCE PROCEDURES"                54

**Claim 23:** "CAUSING AND/OR ALLOWING PLAINTIFF'S ADMINISTRATIVE GRIEVANCES TO BE PROCESSED, REJECTED, REVIEWED, EXCESSIVELY DELAYED, AND OTHERWISE OBSTRUCTED IN VIOLATION OF THE CDCr'S ESTABLISHED ADMINISTRATIVE GRIEVANCE PROCEDURES"                55

V.   PRAYER FOR RELIEF                57

VI.   VERIFICATION                58

Table Showing Plaintiff's Pursuit of Administrative Remedies Regarding this Complaint

Proof of Filing by United State Mail

1 | Eric C.R. K'nAPP (#J10618)
Salinas Valley State Prison
2 | Post Office Box 1050
Soledad, California 93960-1050
3
In Propria Persona
4

5

6

7

8 | UNITED STATES DISTRICT COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10 | ERIC CHARLES RODNEY K'nAPP,                    Case No.: _____

11 | Plaintiff,

12 | v.

13 | James S. TILTON, Michael S. EVANS,
ARCEO, BACKLIN, BALLESSA, BENNETT,
14 | BURK, CANCHOLA, CAPLAN, CHRONES,
CHURLESON, CORE, CRIZANT, DOE-1,
15 | DOE-2, DOE-3, DOE-4, DOE-5, DOE-6,
DOE-7, FOX, FREESE, GODINEZ, GRANNIS,    CIVIL RIGHTS COMPLAINT BY A PRISONER
16 | GROUNDS, HALL, HEDGPETH, HENLEY,        FOR DECLARATORY RELIEF, INJUNCTIVE
HOLLAND, HURDLE, JANSEN, JONES,          RELIEF, AND MONETARY DAMAGES.
17 | KNAPP, KRENKE, Charles Lee, D. LEE,
LEWIS, LOPEZ, MANUEL, MCCALL, MEDINA,             -- **JURY TRIAL DEMANDED** --
18 | MELVIN, MOSS, NEGRON, NEOTTI,
NUCKLES, OVERSTREET, PENNINGTON,
19 | PIMENTAL, POWERS, PRICE, READ,
REDDING, ROJAS, SALAZAR, SOTELO,
20 | STEVENSON, SULLIVAN, Matthew THOMAS,
M. THOMAS, TREXLER, VARIZ, WALL,
21 | WATSON, WELLS, and WOODFORD.

22 | Defendants.
_____/
23

24 | I.

25 | JURISDICTION AND VENUE

26 | 1. Pursuant to 42 U.S.C. § 1983, this is a federal civil rights action

27 | seeking redress of those acts and omissions by defendants under color of state

28 | law that have caused and/or allowed Plaintiff to be deprived of rights,

1

1  privileges, and immunities secured by the Constitution and laws of the United
2  States and of the State of California.

3      2.    The underlying events and circumstances at issue herein occurred
4  within the Northern District of California, thus making this U.S. District Court
5  the proper venue under 28 U.S.C. § 1391(b)(2).

6      3.    Furthermore, not only does this Court have original jurisdiction
7  under 28 U.S.C. §§ 1331 and 1343(a)(3), but also the Court has supplemental
8  jurisdiction under 28 U.S.C. § 1367 and 42 U.S.C. § 1988 to redress all
9  deprivations of federally secured rights that defendants caused and/or allowed
10 Plaintiff to suffer in violation of the Constitution, statutes, and regulations
11 of the State of California.

12     4.    Moreover, the Court has authority to grant declaratory relief in
13 this matter pursuant to 28 U.S.C. §§ 2201 and 2202, and injunctive relief
14 pursuant to Rule 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§
15 2283 and 2284.

16                                II.

17                EXHAUSTION OF ADMINISTRATIVE REMEDIES

18     1.    Plaintiff Eric K'nAPP is confined within the California Department
19 of Corrections and Rehabilitation (hereafter "CDCr"), presently at Salinas
20 Valley State Prison (hereafter "SVSP") in Soledad, California.

21     2.    The CDCr **does** have an established grievance procedure available to
22 Plaintiff at SVSP.

23     3.    Plaintiff **did** present the facts set forth at § IV herein for
24 administrative review pursuant to and in accordance with the CDCr's promulgated
25 grievance regulations.

26     4.    The results of Plaintiff's administrative grievances are listed on
27 the attached "Table Showing Plaintiff's Pursuit of Administrative Remedies."

28     5.    Plaintiff **did** submit most but not all    administrative grievances

2

1    up to and through the CDCr's highest level of review.

2        6.    The reasons for Plaintiff **not** submitting certain administrative

3    grievances up to and through the CDCr's highest level of review are set forth on

4    the attached "Table Showing Plaintiff's Pursuit of Administrative Remedies."

5                                    III.

6                                  PARTIES

7        **Plaintiff.**

8        1.    Eric Charles Rodney K'nAPP (pronounced <kuh·nap>) is a state

9    prisoner within the California Department of Corrections and Rehabilitation

10   (CDCr), presently at Salinas Valley State Prison (SVSP). His current mailing

11   address is shown in the upper left corner on this Complaint's cover page.

12       **Defendants.**

13       2.    Plaintiff is suing the following defendants both in their

14   individual capacities for appropriate monetary damages and in their official

15   capacities for appropriate declaratory and injunctive relief.

16       3.    Plaintiff alleges that each of the following defendants, under

17   color of authority conferred upon them by state law, personally participated in

18   causing and/or allowing Plaintiff to be unconstitutionally deprived of federally

19   secured rights, privileges, and immunities.

20       4.    Defendant James TILTON is Agency Secretary of the CDCr. At all

21   times mentioned herein, he was responsible for the lawful operation of the CDCr,

22   each prison thereof, and for the welfare, rehabilitation, and lawful treatment

23   of all prisoners confined therein.

24       5.    Defendant Michael S. EVANS is Warden of SVSP. At all times

25   mentioned herein he was responsible for the lawful operation of SVSP, each

26   subfacility thereof, and for the welfare, rehabilitation, and lawful treatment

27   of all prisoners confined therein.

28       6.    Defendant J.G. ARCEO was and/or is employed by the CDCr as a

                                    3

1   correctional captain at CDCr headquarters in Sacramento.

2       7.   Defendant BACKLIN was and/or is employed by the CDCr as a
3   registered nurse at SVSP.

4       8.   Defendant L. BALLESSA was and/or is employed by the CDCr as the
5   mailroom supervisor at SVSP.

6       9.   Defendant J.D. BENNETT was and/or is employed by the CDCr as a
7   correctional lieutenant at SVSP.

8       10.  Defendant J. BURK was and/or is employed by the CDCr as the senior
9   librarian at SVSP.

10      11.  Defendant M. CANCHOLA was and/or is employed by the CDCr as a law
11  librarian on Facility "B" at SVSP.

12      12.  Defendant D.J. CAPLAN was and/or is employed by the CDCr as a
13  correctional lieutenant at SVSP.

14      13.  Defendant Lee Ann CHRONES was and/or is employed by the CDCr as the
15  acting Director of the CDCr's Division of Adult Operations at CDCr headquarters
16  in Sacramento.

17      14.  Defendant CHURLESON was and/or is employed by the CDCr presumably
18  as a lieutenant at CDCr headquarters in Sacramento.

19      15.  Defendant J. CORE was and/or is employed by the CDCr as a sergeant
20  prison guard at SVSP.

21      16.  Defendant A. CRIZANT was and/or is employed by the CDCr as a
22  mailroom employee at SVSP.

23      17.  Defendant DOE-1 was and/or is employed by the CDCr as Chief Deputy
24  Secretary of Adult Operations at CDCr headquarters in Sacramento specifically as
25  to Claim 9 of this Complaint's § IV.

26      18.  Defendant DOE-2 was and/or is employed by the CDCr as Chief Deputy
27  Secretary of Adult Operations at CDCr headquarters in Sacramento specifically as
28  to Claim 16 of this Complaint's § IV.

4

1    19.  Defendant DOE-3 was and/or is employed by the CDCr as Director of
2   the  Division  of  Adult  Institutions  at  CDCr  headquarters  in  Sacramento
3   specifically as to Claim 9 of this Complaint's § IV.

4    20.  Defendant DOE-4 was and/or is employed by the CDCr as Deputy
5   Director  of  the  Division  of  Adult  Institutions  at  CDCr  headquarters  in
6   Sacramento specifically as to Claim 9 of this Complaint's § IV.

7    21.  Defendant DOE-5 was and/or is employed by the CDCr as Deputy
8   Director  of  the  Division  of  Health  Care  Services  at  CDCr  headquarters  in
9   Sacramento specifically as to Claims 13 and 14 of this Complaint's § IV.

10    22.  Defendant DOE-6 was and/or is employed by the CDCr as Chief of the
11   Standardized  Procedures  Liaison  Unit  at  CDCr  headquarters  in  Sacramento
12   specifically as to Claim 9 of this Complaint's § IV.

13    23.  Defendant DOE-7 was and/or is employed by the CDCr as Pharmacist at
14   SVSP specifically as to Claim 11 of this Complaint's § IV.

15    24.  Defendant L. FOX was and/or is employed by the CDCr as a licensed
16   vocational nurse at SVSP.

17    25.  Defendant Anthony FREESE was and/or is employed by the CDCr as a
18   correctional captain at CDCr headquarters in Sacramento.

19    26.  Defendant Manuel GODINEZ was and/or is employed by the CDCr as a
20   line guard on Facility "B" at SVSP.

21    27.  Defendant Nancy GRANNIS was and/or is employed by the CDCr as a
22   correctional captain at CDCr headquarters in Sacramento.

23    28.  Defendant R. GROUNDS was and/or is employed by the CDCr as an
24   associate warden at SVSP.

25    29.  Defendant C. HALL was and/or is employed by the CDCr as a
26   correctional captain at CDCr headquarters in Sacramento.

27    30.  Defendant A. HEDGPETH was and/or is employed by the CDCr as the
28   chief deputy warden at SVSP.

1       31.   Defendant HENLEY was and/or is employed by the CDCr as a line guard
2   at SVSP.

3       32.   Defendant R. HOLLAND was and/or is employed by the CDCr as a
4   correctional sergeant at SVSP.

5       33.   Defendant Kenneth G. HURDLE was and/or is employed by the CDCr as
6   Senior Ombudsman at CDCr headquarters in Sacramento.

7       34.   Defendant B. JANSEN was and/or is employed by the CDCr as a
8   correctional sergeant at SVSP.

9       35.   Defendant E.B. JONES was and/or is employed by the CDCr as a
10  correctional captain at SVSP.

11      36.   Defendant L. KNAPP was and/or is employed by the CDCr as the vice
12  principal at SVSP.

13      37.   Defendant T. KRENKE was and/or is employed by the CDCr as a
14  correctional lieutenant at SVSP.

15      38.   Defendant Charles D. LEE (hereafter "LEE-1") was and/or is employed
16  by the CDCr as the chief medical officer at SVSP.

17      39.   Defendant D. LEE (hereafter "LEE-2") was and/or is employed by the
18  CDCr as a correctional lieutenant at CDCr headquarters in Sacramento.

19      40.   Defendant G.D. LEWIS was and/or is employed by the CDCr as an
20  associate warden at SVSP.

21      41.   Defendant Maribel LOPEZ was and/or is employed by the CDCr as the
22  mailroom supervisor at SVSP.

23      42.   Defendant Rick MANUEL was and/or is employed by the CDCr as a
24  captain prison guard at CDCr headquarters in Sacramento.

25      43.   Defendant J. MCCALL was and/or is employed by the CDCr as a
26  correctional lieutenant at SVSP.

27      44.   Defendant Eloy MEDINA was and/or is employed by the CDCr as an
28  appeals coordinator at SVSP.

6

1    45.  Defendant T. MELVIN was and/or is employed by the CDCr as the
2  principal at SVSP.

3    46.  Defendant C. MOSS was and/or is employed by the CDCr as a licensed
4  vocational nurse at SVSP.

5    47.  Defendant L.A. NEGRON was and/or is employed by the CDCr as a
6  correctional lieutenant at SVSP.

7    48.  Defendant G.A. NEOTTI was and/or is employed by the CDCr as the
8  chief deputy warden at SVSP.

9    49.  Defendant K. NUCKLES was and/or is employed by the CDCr as a
10  sergeant prison guard at SVSP.

11    50.  Defendant Martin OVERSTREET was and/or is employed by the CDCr as a
12  correctional captain at CDCr headquarters in Sacramento.

13    51.  Defendant R. PENNINGTON was and/or is employed by the CDCr as a
14  correctional captain at CDCr headquarters in Sacramento.

15    52.  Defendant Richard PIMENTAL was and/or is employed by the CDCr as a
16  correctional counselor at CDCr headquarters in Sacramento.

17    53.  Defendant T. POWERS was and/or is employed by the CDCr as a
18  licensed vocational nurse at SVSP.

19    54.  Defendant Don C. PRICE was and/or is employed by the CDCr as Chief
20  of the Standardized Procedures Liaison Unit at CDCr headquarters in Sacramento
21  specifically as to Claim 9 of this Complaint's § IV.

22    55.  Defendant A.A. READ was and/or is employed by the CDCr presumably
23  as a correctional sergeant or lieutenant at CDCr headquarters in Sacramento.

24    56.  Defendant A. REDDING was and/or is employed by the CDCr as a
25  "specialist" of the CDCr's High Security Transitional Housing Unit at CDCr
26  headquarters in Sacramento.

27    57.  Defendant Rosario ROJAS was and/or is employed by the CDCr as a law
28  librarian on Facility "B" at SVSP.

1    58.   Defendant G.R. SALAZAR was and/or is employed by the CDCr as a
2    correctional lieutenant at SVSP.

3    59.   Defendant A. SOTELO was and/or is employed by the CDCr as a
4    correctional sergeant at SVSP.

5    60.   Defendant J. STEVENSON was and/or is employed by the CDCr as a
6    correctional sergeant at SVSP.

7    61.   Defendant B. SULLIVAN was and/or is employed by the CDCr as a staff
8    services manager at CDCr headquarters in Sacramento.

9    62.   Defendant M. THOMAS (hereafter "THOMAS-1") was and/or is employed
10   by the CDCr as an ombudsman at CDCr headquarters in Sacramento.

11   63.   Defendant M. THOMAS (hereafter "THOMAS-2") was and/or is employed
12   by the CDCr as a sergeant prison guard at SVSP.

13   64.   Defendant L. TREXLER was and/or is employed by the CDCr as    an
14   associate warden at SVSP.

15   65.   Defendant T. VARIZ was and/or is employed by the CDCr as an appeals
16   coordinator at SVSP.

17   66.   Defendant Kathleen WALL was and/or is employed by the CDCr as a
18   registered nurse at SVSP.

19   67.   Defendant L. WATSON was and/or is employed by the CDCr as a
20   sergeant prison guard at SVSP.

21   68.   Defendant William WELLS was and/or is employed by the CDCr as a
22   "special agent" of the Office of Internal Affairs at CDCr headquarters in
23   Sacramento.

24   69.   Defendant Jeanne WOODFORD was and/or is employed by the CDCr as
25   Director of the Division of Adult Institutions at CDCr headquarters in
26   Sacramento.

27   ///

28   ///

8

1

**IV.**

2

STATEMENT OF CLAIMS

3

**Preliminary facts.**

4      1.    Since 1996, Plaintiff has been a patient in the CDCr's Mental
5    Health Services Delivery System with a consistent diagnosis of Post-Trauma
6    Stress Disorder and related conditions resulting from severe physical and
7    psychological trauma he experienced upon entering the prison system in 1994 as a
8    recent peace officer of the State of California and a U.S. military policeman at
9    the rank of sergeant who currently stands wrongly convicted of sexually
10   assaulting a woman who has since come forward and confessed that she lied
11   against him.

12     2.    Plaintiff's mother - B. Cayenne Bird - is the volunteer director of
13   a prison watchdog group called United for No Injustice, Oppression, Neglect
14   (hereafter "UNION"). Since 1998, Plaintiff's mother has worked hard through
15   UNION trying to educate, organize, and thereby empower the family members and
16   friends of all California state prisoners to more effectively advocate against
17   abuse of prisoners and other corruption within the CDCr.

18     3.    Since around the middle of 1999, Plaintiff has suffered significant
19   retaliation by CDCr employees at six different prisons directly related to the
20   ongoing activism of his mother by and through UNION's Internet website at
21   1union1.com. As a result, Plaintiff has become something of an activist himself.
22   He completed a 2-year Legal Assistant correspondence course and has since become
23   a certified paralegal. Accordingly, prison officials know him as a respectable
24   but nevertheless highly contemned "jailhouse lawyer" who seeks vindication of
25   not merely his own rights but also other prisoners' rights as well.

26     4.    During the seven months of March to October 2005, the CDCr
27   subjected Plaintiff to three retaliatory transfers between four different
28   prisons, ending with Plaintiff's transfer to Salinas Valley State Prison on

9

1  10/18/05.

2  **Claim 1**

3  DEFENDANTS BALLESSA, CRIZANT, EVANS, GRANNIS, HEDGPETH,
   LOPEZ, PIMENTAL, SALAZAR, AND STEVENSON VIOLATED
4  PLAINTIFF'S RIGHTS UNDER STATE LAW AND THE U.S.
   CONSTITUTION'S FIRST, FOURTH, EIGHTH, AND FOURTEENTH
5  AMENDMENTS BY CAUSING AND/OR ALLOWING PLAINTIFF TO
   SUFFER ILLEGAL SEIZURE AND DEPRIVATION OF AUTHORIZED
6  PERSONAL PROPERTY FROM INCOMING MAIL FOR NO VALID REASON
   SERVING A LEGITIMATE PENOLOGICAL OBJECTIVE.

7

8  5.    Plaintiff restates and incorporates by reference inclusively the

9  foregoing paragraphs numbered 1-4.

10  6.    On 10/26/05, defendant LOPEZ arbitrarily, capriciously, and

11  otherwise unlawfully withheld from Plaintiff's incoming mail all but only 20

12  pages of UNION newsletters that Plaintiff's mother had printed from UNION's

13  website using her personal computer.

14  7.    Both Plaintiff and Plaintiff's mother promptly reported the matter

15  to defendant EVANS - Plaintiff through an administrative grievance on 10/27/05

16  and Plaintiff's mother in a letter sent as certified mail on 11/18/05.

17  8.    On 11/22/05, Plaintiff and his mother again suffered unlawful

18  interference with their protected speech, association, and mail rights, this

19  time when defendant CRIZANT arbitrarily, capriciously, and otherwise illegally

20  took from Plaintiff's incoming mail 86 UNION newsletter pages that Plaintiff's

21  mother had further printed using her home computer.

22  9.    Although Plaintiff did submit a timely administrative grievance on

23  11/22/05, defendants BALLESSA, CRIZANT, EVANS, GRANNIS, HEDGPETH, LOPEZ,

24  PIMENTAL, SALAZAR, and STEVENSON - despite possessing sufficient rank,

25  responsibility, and opportunity to address and correct the problem on

26  Plaintiff's behalf - caused and/or allowed the unlawfully confiscated UNION

27  material to be lost, destroyed, and/or otherwise never given to Plaintiff or

28  returned to Plaintiff's mother.

10

1    10.  By and through these events and circumstances, the named defendants
2  caused and/or allowed Plaintiff and Plaintiff's mother to suffer violation(s) of
3  at least their following constitutional rights: to freely speak, associate, and
4  assemble through mail; to be free from unreasonable seizure of personal
5  property; to not be denied Equal Protection of law; to not be deprived of
6  personal property and liberty without Due Process; and to be free from
7  intentional and negligent infliction of mental anguish and emotional distress,
8  and from callous, reckless, and deliberate indifference toward their secured
9  rights under the Constitution, statutes, and regulations of the United States
10  and of the State of California.

### Claim 2

DEFENDANTS BALLESSA, CRIZANT, HEDGPETH, LOPEZ, AND
SALAZAR VIOLATED PLAINTIFF'S RIGHTS UNDER STATE LAW AND
THE U.S. CONSTITUTION'S FIRST, EIGHTH, AND FOURTEENTH
AMENDMENTS BY CAUSING AND/OR ALLOWING PLAINTIFF TO
SUFFER ILLEGAL OBSTRUCTION OF HIS OUTGOING CONFIDENTIAL
MAIL TO COURTS, ATTORNEYS, AND GOVERNMENT OFFICIALS FOR
NO VALID REASON SERVING A LEGITIMATE PENOLOGICAL
OBJECTIVE.

17    11.  Plaintiff restates and incorporates by reference inclusively the
18  foregoing paragraphs numbered 1-10.

19    12.  From 11/1/05 to 8/14/06, defendants BALLESSA, CRIZANT, HEDGPETH,
20  LOPEZ, and SALAZAR caused and/or allowed more than 25 envelopes of Plaintiff's
21  outgoing confidential mail to attorneys, state and federal courts, and various
22  government officials to be returned to Plaintiff unmailed for arbitrary and
23  capricious reasons not supported by any CDCr rule or regulation.

24    13.  Although Plaintiff did personally inform the above defendants that
25  he had suffered the particular law and rights violation(s) alleged herein, each
26  defendant failed and/or refused to take appropriate corrective action on
27  Plaintiff's behalf despite possessing sufficient rank, responsibility, and
28  opportunity to do so.

\\

14.   Thus the named defendants personally participated in causing and/or allowing Plaintiff to suffer violation(s) of at least his following constitutional right(s): to petition for redress of grievances; to be afforded meaningful and unimpeded access to the courts; to not be deprived of protected liberty without Due Process; to not be denied Equal Protection of law; and to be free from intentional and negligent infliction of mental anguish and emotional distress, and from callous, reckless, and deliberate indifference toward his secured rights under the Constitution, statutes, and regulations of the United States and of the State of California.

### Claim 3

DEFENDANT EVANS VIOLATED PLAINTIFF'S RIGHTS UNDER STATE LAW, TITLE II OF THE AMERICANS WITH DISABILITIES ACT, THE REHABILITATION ACT, AND THE U.S. CONSTITUTION'S FIRST, EIGHTH, AND FOURTEENTH AMENDMENTS BY CAUSING AND/OR ALLOWING PLAINTIFF'S REQUEST FOR A REASONABLE AND NECESSARY DISABILITY ACCOMMODATION TO BE DENIED FOR NO VALID REASON SERVING A LEGITIMATE PENOLOGICAL OBJECTIVE.

15.   Plaintiff restates and incorporates by reference inclusively the foregoing paragraph numbered 1.

16.   Since 1998, many psychologists at several different prisons have consistently recognized and recommended that frequent contact visits with outside loved ones should be considered one of the most crucial elements in providing Plaintiff with meaningful treatment and therapy for his diagnosed mental health conditions. However, not only do most of Plaintiff's loved ones live in the Sacramento area — which is at least 250 miles away from Salinas Valley State Prison - but also his mother suffers various medical conditions which make it extremely difficult for her to travel very far from her home. Accordingly, both Plaintiff and his mother are disabled persons entitled to protection under Section 504 of the Rehabilitation Act at 29 U.S.C. § 794 and under Title II of the Americans with Disabilities Act at 42 U.S.C. § 12131 et seq.

12

17.    Title II of the Americans with Disabilities Act specifically states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." (See, 42 U.S.C. § 12132; see also, § 12131(2) [the CDCr **is** a "public entity"; Plaintiff's mother **is** a "qualified individual with a disability" who requires "removal of ... **transportation** barriers" so that she and Plaintiff can participate in and **not** be denied benefit of "the receipt of services or the participation in programs or activities provided by a public entity" such as visitation within the CDCr].)

18.    California Penal Code § 5068 mandates that "[t]he director [of the California prison system] **shall** assign a prisoner to the institution ... **nearest** the prisoner's home, **unless** other classification factors make such a placement **unreasonable.**"

19.    In addition, the CDCr has promulgated the following regulations which are germane to this particular Claim:

Title 15 of the California Code of Regulations (hereafter "15CCR")

Article 7.  Visiting.

**3170. General Visiting.**
(a) These regulations are made in recognition and consideration of the value of inmate visitation as a means of increasing safety in prisons, **maintaining** family and community connections, and preparing inmates for successful release and rehabilitation. It is the intent of these regulations to establish a visiting process ... that is conducted in as **accommodating** manner as **possible**[.]
(f) Reasonable accommodation **shall** be afforded **visitors** and inmates with disabilities to **facilitate** their **full** participation in contact, noncontact, or family visiting[.]

Article 10.  Classification.

**3375.2 Administrative Determinants.**
(b) The following three-letter codes are used to indicate those administrative or irregular placement conditions known as administrative determinants,

13

which may be imposed by departmental officials to override the placement of an inmate at a facility according to his/her placement score.
(10) FAM. Inmate has strong family ties to a particular area where other placement would cause an unusual hardship.

20.  On 2/16/06, after and because his physically disabled mother and other loved ones had suffered much difficulty visiting him at SVSP following his retaliatory transfer there on 10/18/05 (see above, at ¶ 4), Plaintiff petitioned defendant EVANS in writing to have him transferred closer to the Sacramento area pursuant to and in accordance with Title II of the ADA, the Rehabilitation Act, Penal Code § 5068, and 15CCR § 3375.2(b)(10). Moreover, on 4/5/06, Plaintiff submitted a related CDCr form 1824 Reasonable Accommodation Request.

21.  Yet although Plaintiff did personally inform defendant EVANS of these particular circumstances, EVANS failed and/or refused to take appropriate corrective action on behalf of either Plaintiff, Plaintiff's physically disabled mother, or Plaintiff's other loved ones despite possessing sufficient rank, responsibility, and opportunity to do so.

22.  Furthermore, not only did defendant EVANS cause and/or allow Plaintiff's 2/16/06 request under the above statutes and regulations to be arbitrarily and capriciously denied solely on the basis of an illegal "underground regulation" but also he and defendant VARIZ caused and/or allowed Plaintiff's 4/5/06 Reasonable Accommodation Request to be arbitrarily and capriciously mishandled and otherwise obstructed in violation of the CDCr's established grievance regulations and procedures as well as the Armstrong Remedial Plan currently overseen by this District Court in Armstrong v. Davis C94-2307 CW.

23.  As a result of these events and circumstances, Plaintiff and his loved ones have suffered and are continuing to suffer violation(s) of at least their following constitutional right(s): to freely speak, associate, and

14

1  assemble; to not be deprived without Due Process of the consortium, society, and
2  related liberty that is encouraged, protected, and arguably even guaranteed
3  under state law; to not be denied Equal Protection of law; and to be free from
4  intentional and negligent infliction of mental anguish and emotional distress,
5  and from callous, reckless, and deliberate indifference toward their secured
6  rights under the Constitution, statutes, and regulations of the United States
7  and of the State of California.

### Claim 4

DEFENDANT VARIZ VIOLATED PLAINTIFF'S RIGHTS UNDER STATE
LAW, THE REHABILITATION ACT, TITLE II OF THE AMERICANS
WITH DISABILITIES ACT, THE ARMSTRONG REMEDIAL PLAN, AND
THE U.S. CONSTITUTION'S FIRST AND FOURTEENTH AMENDMENTS
BY CAUSING AND/OR ALLOWING PLAINTIFF'S DISABILITY
ACCOMMODATION REQUEST TO BE UNLAWFULLY OBSTRUCTED FOR NO
VALID REASON SERVING A LEGITIMATE PENOLOGICAL OBJECTIVE.

24.  Plaintiff suffers a very painful finger deformity that
significantly impairs his ability to write with a pen or pencil. His family has
therefore always provided him with a personal typewriter in prison pursuant to
and in accordance with the CDCr's applicable property regulations.

25.  In August of 2005, staff at another prison had damaged Plaintiff's
personal typewriter, but Plaintiff was able to continue using it with help from
tape, paper clips, and string. However, by the end of February 2006 the
typewriter stopped working altogether.

26.  On 3/5/06, pursuant to the Armstrong Remedial Plan and 15CCR §§
3084.7(k) and 3085 et seq., Plaintiff submitted a CDCr form 1824 Reasonable
Accommodation Request asking that his family be allowed to purchase for him an
identical or more expensive replacement typewriter in continued facilitation of
his disability.

27.  However, in violation of the CDCr's established grievance
regulations and the Armstrong Remedial Plan, defendant VARIZ arbitrarily and
capriciously rejected Plaintiff's disability accommodation request and converted

15

1 | it to an ordinary administrative grievance instead.

2 |     28.  Thus defendant VARIZ caused and/or allowed Plaintiff to suffer
3 | violation(s) of at least his following constitutional right(s): to petition the
4 | government for a redress of grievance and to be afforded meaningful and
5 | unimpeded court access pursuant to and in accordance with the CDCr's established
6 | grievance procedures contained within promulgated CDCr regulations and the
7 | Armstrong Remedial Plan; to not be denied Equal Protection of law; to not be
8 | deprived of protected liberty without Due Process; and to be free from
9 | intentional and negligent infliction of mental anguish and emotional distress,
10 | and from callous, reckless, and deliberate indifference toward his secured
11 | rights under the Constitution, statutes, and regulations of the United States
12 | and of the State of California.

13 | **Claim 5**

14 | DEFENDANT VARIZ VIOLATED PLAINTIFF'S RIGHTS UNDER STATE
    LAW AND THE U.S. CONSTITUTION'S FIRST AND FOURTEENTH
15 | AMENDMENTS BY CAUSING AND/OR ALLOWING PLAINTIFF TO
    SUFFER OBSTRUCTION OF A STAFF MISCONDUCT COMPLAINT FOR
16 | NO VALID REASON SERVING A LEGITIMATE PENOLOGICAL
    OBJECTIVE.

17 |

18 |     29.  On 3/2/06, Plaintiff submitted a CDCr form 602 reporting inciteful
19 | misconduct committed against him earlier that morning by defendant CORE.

20 |     30.  Rather than process and assign the staff misconduct complaint
21 | pursuant to and in accordance with the CDCr's promulgated grievance regulations,
22 | defendant VARIZ arbitrarily and caprciously rejected it on 3/7/06 and then
23 | failed to get it back to Plaintiff until more than two weeks later.

24 |     31.  On 3/25/06, Plaintiff sent VARIZ a written explanation of why the
25 | grievance's rejection had been in error, but VARIZ refused to answer or even
26 | acknowledge Plaintiff's attempt to further pursue the matter.

27 |     32  Thus defendant VARIZ caused and/or allowed Plaintiff to suffer
28 | violation(s) of at least his following constitutional right(s): to petition the

1  government for a redress of grievances and to be afforded meaningful and
2  unimpeded court access pursuant to and in accordance with the CDCr's **established**
3  grievance procedures contained within promulgated CDCr regulations; to not be
4  denied Equal Protection of law; to not be deprived of protected liberty without
5  Due Process; to be free from intentional and negligent infliction of mental
6  anguish and emotional distress; and to not be treated with such callous,
7  reckless, and deliberate indifference toward his secured rights under the
8  Constitution, statutes, and regulations of the United States and of the State of
9  California.

### Claim 6

DEFENDANTS BALLESSA, LOPEZ, AND SALAZAR VIOLATED
PLAINTIFF'S RIGHTS UNDER STATE LAW AND THE U.S.
CONSTITUTION'S FIRST, FOURTH, EIGHTH, AND FOURTEENTH
AMENDMENTS BY CAUSING AND/OR ALLOWING PLAINTIFF TO
SUFFER **RETALIATORY** DELAY AND NONDELIVERY OF INCOMING
PERSONAL MAIL AND LEGAL PUBLICATIONS FOR NO VALID REASON
SERVING A LEGITIMATE PENOLOGICAL OBJECTIVE.

15  33.  Plaintiff restates and incorporates by reference inclusively the
16  foregoing paragraphs numbered 1-14.

17  34.  After and because Plaintiff thus exercised his constitutionally
18  guaranteed and protected right to petition for redress of the above and other
19  events and circumstances at SVSP, defendants BALLESSA, LOPEZ, and SALAZAR
20  individually and collectively caused and/or allowed Plaintiff to be retaliated
21  against with delivery of his incoming personal mail being excessively delayed
22  beyond the seven calendar days permitted by CDCr policy. Moreover, BALLESSA,
23  LOPEZ, and SALAZAR caused and/or allowed at least four of Plaintiff's
24  consecutive issues of a monthly publication called Prison Legal News to be
25  removed from the mailroom and not delivered to Plaintiff at all.

26  35.  Thus the named defendants personally participated in causing and/or
27  allowing Plaintiff to suffer violation(s) of at least his following
28  constitutional right(s): to not be unduly impeded in receiving mail from outside

17

1  correspondents; to be free from unreasonable seizure of property; to not be
2  deprived of personal property and protected liberty without Due Process; to not
3  be denied Equal Protection of law; to not be retaliated against for exercising
4  protected rights; to be free from intentional and negligent infliction of mental
5  anguish and emotional distress; and to not be treated with such callous,
6  reckless, and deliberate indifference toward the secured rights he has under the
7  Constitution, statutes, and regulations of the United States and of the State of
8  California.

9  ### Claim 7

10  DEFENDANTS EVANS AND LEE-1 VIOLATED PLAINTIFF'S RIGHTS
    UNDER STATE LAW, THE REHABILITATION ACT, TITLE II OF THE
11  AMERICANS WITH DISABILITIES ACT, AND THE U.S.
    CONSTITUTION'S EIGHTH AND FOURTEENTH AMENDMENTS BY
12  CAUSING AND/OR ALLOWING PLAINTIFF TO REPEATEDLY SUFFER
    FORCED AND PAINFUL WITHDRAWAL FROM PRESCRIBED
13  PSYCHIATRIC MEDICATION FOR NO VALID REASON SERVING A
    LEGITIMATE PENOLOGICAL OBJECTIVE.

14

15  36.  Plaintiff restates and incorporates by reference inclusively the
16  foregoing paragraphs numbered 1, 16, and 24.

17  37.  Since 2005, CDCr psychiatrists have been treating Plaintiff's
18  diagnosed mental condition with Effexor®, an antianxiety medication known to
19  cause excruciatingly painful withdrawal symptoms in patients whose dosages are
20  suddenly discontinued or otherwise not reduced in a medically appropriate
21  manner.

22  38.  In addition, CDCr doctors have also prescribed specific other items
23  that Plaintiff has been determined to need - e.g., pressure mattress, back
24  brace, pillows - in meaningful accommodation of his very painful back and neck
25  problems.

26  39.  On 4/27/06, 5/17/06, and 8/2/06, defendants EVANS and LEE-1 caused
27  and/or allowed Plaintiff to be temporarily transferred away from SVSP for
28  temporary housing at other facilities to appear in court **without** a supply of his

18

prescribed medication, any of his prescribed medical accommodations, or the CDCr doctors' specific prescriptions for those medically necessary requirements.

40. As a result, defendants EVANS and LEE-1 caused and/or allowed Plaintiff to suffer many days of agonizing physical and mental pain each of the following times he was temporarily transferred and housed elsewhere: while at the Sacramento County Jail from 4/27/06 to 5/11/06; while unlawfully confined in administrative segregation at SVSP from 5/11/06 to 5/17/06; while unlawfully confined at administrative segregation at another prison from 5/17/06 to 5/26/06; while again unlawfully confined in administrative segregation at SVSP from 5/26/06 to 6/8/06; while again unlawfully confined in administrative segregation at another prison from 8/3/06 to 8/9/06; and while on "orientation" status upon again returning to SVSP from 8/9/06 to 8/13/06.

41. Although Plaintiff did personally inform defendants EVANS and LEE-1 that he had suffered the particular law and rights violation(s) alleged herein, each defendant failed and/or refused to take appropriate corrective action on Plaintiff's behalf despite possessing sufficient rank, responsibility, and opportunity to do so.

42. Thus defendants EVANS and LEE-1 personally participated in causing and/or allowing Plaintiff to suffer violation(s) of at least his following constitutional right(s): to be free from cruel and unusual punishment; to not be deprived of medication, medical accommodations, and other treatment needs prescribed for him by doctors; to not be denied Equal Protection of law; to be free from intentional and negligent infliction of mental anguish and emotional distress; and to not be treated with such callous, reckless, and deliberate indifference toward the secured rights he has under the Constitution, statutes, and regulations of the United States and of the State of California.

///
///

19

1

### Claim 8

2

3

4

5

6

DEFENDANTS ARCEO, EVANS, GRANNIS, HEDGPETH, MANUEL, AND NUCKLES VIOLATED PLAINTIFF'S RIGHTS UNDER STATE LAW, THE REHABILITATION ACT, TITLE II OF THE AMERICANS WITH DISABILITIES ACT, AND THE U.S. CONSTITUTION'S FIRST, EIGHTH, AND FOURTEENTH AMENDMENTS BY CAUSING AND/OR ALLOWING PLAINTIFF TO SUFFER RETALIATORY AND OTHERWISE UNLAWFUL DENIAL OF CONSORTIUM AND SOCIETY WITH HIS MOTHER FOR NO VALID REASON SERVING A LEGITIMATE PENOLOGICAL OBJECTIVE.

7       43. Plaintiff restates and incorporates by reference inclusively the
8   foregoing paragraphs numbered 1-35.

9       44. At around 11:30 p.m. on 6/16/06, Plaintiff's fiancee and
10  Plaintiff's physically disabled mother drove the 3½-hour trip from Sacramento so
11  they could visit Plaintiff on 6/17/06 and 6/18/06. Upon arriving at SVSP around
12  3:30 in the morning on 6/17/06, they parked in line behind the many other
13  waiting visitors and tried to sleep inside the car over the next few hours
14  before visitor processing began.

15      45. Because they had visited Plaintiff since 1994 at many different
16  CDCr prisons, Plaintiff's fiancee and mother knew to always dress in accordance
17  with the standard for visitors set forth at Section 54020.20 of the CDCr's
18  Department Operations Manual. Accordingly, on 6/17/06, both Plaintiff's fiancee
19  and Plaintiff's mother were wearing outfits that they had previously worn on
20  several occasions to visit Plaintiff over the years at other prisons including
21  SVSP.

22      46. When Plaintiff's fiancee and mother got to Visitor Processing, not
23  only did defendant NUCKLES - merely to retaliate against Plaintiff and
24  Plaintiff's mother for their ongoing First Amendment exercise, especially
25  Plaintiff's regarding those events and circumstances set forth herein at Claims
26  1-6 - arbitrarily, capriciously, and otherwise unlawfully refuse to allow
27  Plaintiff's mother in to see Plaintiff wearing the very outfit that she had
28  previously worn when visiting Plaintiff at SVSP on 11/6/05, 12/24/05, and

20

4/9/06, but also NUCKLES first failed to produce any authority higher than DOM § 54020.20 that prohibited the outfit Plaintiff's mother was wearing, and then purposely concealed her identifying name tag from Plaintiff's mother. Moreover, when Plaintiff's mother leaned across the counter in an effort to see NUCKLES's name tag anyway, NUCKLES falsely accused Plaintiff's mother of physically assaulting her, whereupon NUCKLES caused Plaintiff's mother to be escorted off the prison grounds and not be allowed to see Plaintiff at all that entire weekend and then for the next six months.

47.   Plaintiff then administratively appealed to have his mother's 6-month visiting suspension rescinded out of consideration for all the contributing factors and underlying events and circumstances, including the extreme physical and psychological hardship Plaintiff's mother had suffered in driving so far only to be told by NUCKLES she could not wear an outfit she had worn several times previously at that and other prisons, the inciteful misconduct of NUCKLES on 6/17/06, and Plaintiff's diagnosed mental condition and prescribed need to have regular physical contact with his loved ones.

48.   However, although defendants ARCEO, EVANS, GRANNIS, HEDGPETH, and MANUEL were personally informed by Plaintiff or otherwise made aware of the above events and circumstances, each defendant failed and/or refused to take appropriate corrective action on Plaintiff's behalf despite possessing sufficient rank, responsibility, and opportunity to do so.

49.   Thus the named defendants personally participated in causing and/or allowing Plaintiff and Plaintiff's mother to suffer violation(s) of at least their following constitutional right(s): to consortium and society with and between one another; to freely speak, associate, and assemble; to not be retaliated against for exercising protected rights; to not be deprived of protected liberty without Due Process; to not be denied Equal Protection of law; to not be made subject to arbitrary and capricious staff whims; to be free from

21

1  intentional and negligent infliction of mental anguish and emotional distress;
2  and to not be treated with such callous, reckless, and deliberate indifference
3  toward the secured rights ~~he~~ they have ~~has~~ under the Constitution, statutes, and
4  regulations of the United States and of the State of California.

### Claim 9

DEFENDANTS CAPLAN, CHRONES, CORE, CHURLESON, DOE-1,
DOE-3, DOE-4, DOE-6, EVANS, FREESE, GODINEZ, GRANNIS,
GROUNDS, HOLLAND, JANSEN, JONES, KRENKE, LEE-2, LEWIS,
MCCALL, MEDINA, NEGRON, NEOTTI, OVERSTREET, PRICE, READ,
REDDING, THOMAS-1, THOMAS-2, TILTON, AND WELLS VIOLATED
PLAINTIFF'S RIGHTS UNDER STATE LAW AND THE U.S.
CONSTITUTION'S FIRST, FOURTH, EIGHTH, AND FOURTEENTH
AMENDMENTS BY CAUSING AND/OR ALLOWING PLAINTIFF TO
SUFFER **RETALIATORY** AND OTHERWISE UNREASONABLE SEIZURE
AND DEPRIVATION OF AUTHORIZED PERSONAL PROPERTY FROM
INCOMING MAIL FOR NO VALID REASON SERVING A LEGITIMATE
PENOLOGICAL OBJECTIVE.

50.    In 2003, the CDCr promulgated new regulations whereby all prisoners
housed within the CDCr's 34 adult prisons are entitled to obtain various items
of personal property in packages mailed once every three months from any of
several catalog vendors which the CDCr carefully screens and approves.

51.    The CDCr published a Statement of Reasons for enacting such
regulations which states that the regulations are to "standardize" property
limitations and package procedures throughout the CDCr so that all prisoners and
staff know exactly which items of personal property prisoners are authorized to
possess and exactly how prisoners are to go about obtaining such items of
authorized personal property.

52.    Under the CDCr's "standardizing" regulations, all CDCr-approved
vendors must provide periodically updated catalogs showing **only** those items of
personal property that CDCr headquarters has specifically **authorized** its
approved vendors to sell to **all** CDCr prisoners at **all** of the CDCr's 34 adult
prisons. In fact, the CDCr's regulations expressly **prohibit** vendors from selling
for or shipping to CDCr prisoners **anything** that CDCr headquarters has

22

1  specifically reviewed and designated as a "Granted Facility Exemption" at any
2  one or more of its 34 prisons.

3      53.  Should the warden at any one of the CDCr's 34 adult prisons now
4  want to prohibit the prisoners at his or her particular prison from possessing
5  specific items of personal property that CDCr headquarters preapproves its
6  vendors to sell to all CDCr prisoners, then that warden is **obligated** by the
7  CDCr's **mandatory** regulations to **first** comply with a clearly outlined review and
8  approval process by and through CDCr headquarters. The governing regulations do
9  **not** bestow **any** type of power or authority whatsoever upon wardens and/or their
10 subordinate staff to **independently** pick and choose which specific item(s) of
11 **preapproved** personal property prisoners are and are not allowed to retain when
12 packages arrive at prisons.

13     54.  Prior to August of 2005, Facility "B" at SVSP was populated by
14 approximately 1,200 high-security (i.e., Level IV) prisoners who, in defensive
15 response to ongoing abuse and oppression by "Green Wall" and other such cliques
16 of cowardly "gangster" wannabe guards, eventually became so violent and
17 otherwise disruptive that SVSP guards begged the CDCr to replace the entire
18 Facility "B" population with 1,200 **medium**-security (i.e., Level III) prisoners
19 specifically classified as having "Sensitive Needs" as a result of belonging to
20 identifiable groups - gang dropouts, former cops, sex offenders, etc. -
21 frequently singled out for attack when not segregated from other prisoners.
22 Accordingly, beginning around August of 2005, the CDCr answered the prayers of
23 SVSP guards by converting Facility "B" into a Level III Sensitive Needs Yard
24 ("SNY"). Among the new arrivals on 10/18/05 was Plaintiff Eric K'nAPP.

25     55.  The conversion of Facility "B" at SVSP from a Level IV Main Line to
26 a Level III SNY was complete by the end of 2005, whereupon guards and prisoners
27 collectively began getting acquainted. At first, the 200 or so mostly young line
28 officers were somewhat leery of the new SNY prisoners because, unlike the Level

23

IV prisoners who had been there just before, the Level III prisoners were polite, respectful, nonviolent, and otherwise willing to work **with** staff rather than against them.

56. During the initial period of transition, Plaintiff and other Level III prisoners on Facility "B" were being given **everything** they received in quarterly vendor packages. But by around April or May of 2006, defendant GODINEZ began to exact candy bars, pastries, soups, and other such items of personal property from prisoners' incoming vendor packages as a sort of tip, or gratuity, for GODINEZ's self-proclaimed "kindness" in issuing prisoners their incoming vendor packages even though it was not his job nor was he assigned to do so.

57. When Plaintiff and other prisoners dared to resist GODINEZ's usurious extortion, GODINEZ would threateningly smile and warn that whatever items of incoming personal property he was not given "voluntarily" by a prisoner he would nevertheless seize from all other prisoners as "contraband" merely on the strength of his own invented rationalizations.

58. In May or June of 2006, two prisoners on the Facility "B" Men's Advisory Council challenged GODINEZ in person about his lack of authority to arbitrarily seize various items of **preapproved** personal property from their and other prisoners' incoming vendor packages without CDCr headquarters **first** reviewing and/or designating such items as **Granted** Facility Exemptions pursuant to and in accordance with the CDCr's "standardizing" property and package regulations of 2003.

59. In retaliatory response to being thus challenged by the above prisoners, GODINEZ - with permission by his immediate supervisors at the time, defendants CORE, JANSEN, KRENKE, and NEGRON — began to create and implement his own "standardized" list of personal property items that Facility "B" prisoners would **not** be given from their incoming vendor packages. Moreover, not only did GODINEZ apply his personal list of "unauthorized" items with discrimination

24

1  against just certain types of prisoners (e.g., physically or mentally
2  handicapped, elderly, new in the prison system, sex offenders, etc.), but also
3  GODINEZ kept adding new items to the list whenever he or other guards wanted
4  something new or different out of prisoners' incoming packages. (For example,
5  just moments after once issuing Plaintiff his package and refusing to let Plaintiff
6  have a box of preapproved candy, defendant CORE obtained the box of candy for
7  herself and ate it with a big grin in front of Plaintiff and other witnessing
8  prisoners.)

9  60.  At the beginning of 2007, after one of the two above prisoners on
10  the Men's Advisory Council had suffered retaliatory confinement in
11  administrative segregation for filing a related guard misconduct complaint
12  against GODINEZ, Plaintiff asked GODINEZ if prisoners' incoming vendor packages
13  could please go back to being issued in accordance with CDCr regulations. In
14  reply, GODINEZ stated "I'll tell you what, if you can get anyone above me to say
15  I'm doing things wrong now, then I'll go back to doing things the way I'm
16  supposed to."

17  61.  Accordingly, on 2/4/07, Plaintiff promptly sent defendant EVANS a
18  respectfully worded memo seeking satisfactory resolution of the ongoing problem
19  through the least formal means necessary, but EVANS and defendant KRENKE refused
20  to let the problem be administratively addressed or resolved through such
21  informal means.

22  62.  On 2/20/07, Plaintiff submitted an administrative grievance wherein
23  he presented the following questions to and received the following answers from
24  defendant NEOTTI on behalf of EVANS:

25  Q1:  "Do CDCr regulations give [Plaintiff] and other SVSP prisoners on
26      Facility 'B' a right to receive any/all items of personal property not
27      specifically listed as 'Granted Facility Exemptions' within
28      departmentally approved vendor catalogs as long as such items are

25

1    consistent with assigned privilege groups?"

2    A1:  "CDCr regulations give all inmates at SVSP the right to receive any and
3         all items of personal property legally obtained via vendor package not
4         specifically listed as 'Granted Exemptions' as long as such items are
5         consistent with assigned privilege groups, in the quantities and
6         regulations set forth."

7    Q2:  "Do CDCr regulations allow SVSP officers to arbitrarily pick and choose
8         which **nonexempt** items may and may not be ordered/received by Facility
9         "B" prisoners from departmentally approved catalogs?"

10   A2:  "CDCr regulations do not allow SVSP officers to arbitrarily pick and
11        choose which nonexempt items may and may not be ordered and received
12        from departmentally approved vendor catalogues."

13   Q3:  "Have **all** items on 'SVSP-specific' order forms (such as from Access
14        SecurePak) already been approved at/by CDCr headquarters for SVSP
15        prisoners and their correspondents to order from departmentally
16        approved vendors?"

17   A3:  "All items on SVSP specific order forms have been approved by CDCr for
18        SVSP prisoners and their correspondents. The responsibility of the
19        inmate and correspondent is to know privilege group criteria."

20   Q4:  "Do CDCr regulations give [Plaintiff] and other SVSP prisoners on
21        Facility "B" a right to receive their packages within 15 days of
22        packages arriving at the prison?"

23   A4:  "CDCr regulations allow for all inmates to receive their packages to
24        which they are rightfully entitled within the timeframes stipulated by
25        policy unless exigent circumstances that can be articulated delay their
26        issuance."

27   Q5:  "Do CDCr regulations allow SVSP officers to count hot pots, fans, and
28        other such items that are or have been allowed at SVSP against the

1            2-appliance limit?"

2     A5:  [No response given.]

3     Q6:  "Do CDCr regulations allow SVSP officers to count the DC-powered (i.e.,
4           battery-operated but AC-rechargeable) Panasonic® ER389H Clear Beard &
5           Mustache Trimmer against the 2-appliance limit?"

6     A6:  "CDCr regulations state that, 'battery operated nonentertainment
7           appliances shall not count towards the appliance limit'. [D.O.M.]
8           54030.17.09"

9     63. However, in arrogant disregard of the above answers by defendant
10 EVANS through defendant NEOTTI, defendant GODINEZ continued to cause preapproved
11 items of personal property to be illegally taken from Plaintiff's and other
12 prisoners' incoming vendor packages without CDCr headquarters ever designating
13 any of the seized items as Granted Facility Exemptions pursuant to or in
14 accordance with the CDCr's governing regulations.

15     64. Despite Plaintiff submitting the above and several other
16 administrative grievances concerning the matter, defendants CAPLAN, CORE,
17 CHURLESON, DOE-1, DOE-3, DOE-4, DOE-6, EVANS, FREESE, GODINEZ, GRANNIS, GROUNDS,
18 HOLLAND, JANSEN, JONES, KRENKE, LEE-2, LEWIS, MCCALL, MEDINA, NEGRON, NEOTTI,
19 OVERSTREET, PRICE, READ, REDDING, THOMAS-1, THOMAS-2, TILTON, and WELLS not only
20 caused and/or allowed the problem to continue unabated, but also they caused
21 and/or allowed GODINEZ to take even more items of preapproved personal property
22 from Plaintiff's and other prisoners' incoming vendor packages in retaliatory
23 response to Plaintiff and other prisoners documenting and reporting the matter in letters
24 and administrative grievances.

25     65. For example, the above defendants caused and/or allowed defendant
26 GODINEZ to unlawfully take from Plaintiff's incoming vendor packages on 3/22/07,
27 6/24/07, 10/5/07, and 12/21/07 many items of Plaintiff's personal property that
28 CDCr headquarters had already preapproved its authorized vendors to specifically

1  make available for Plaintiff's loved ones to purchase for Plaintiff to possess
2  at SVSP.

3     66.  Thus, although defendants CAPLAN, CORE, CHURLESON, DOE-1, DOE-3,
4  DOE-4, DOE-6, EVANS, FREESE, GODINEZ, GRANNIS, GROUNDS, HOLLAND, JANSEN, JONES,
5  KRENKE, LEE-2, LEWIS, MCCALL, MEDINA, NEGRON, NEOTTI, OVERSTREET, PRICE, READ,
6  REDDING, THOMAS-1, THOMAS-2, TILTON, and WELLS were personally informed by
7  Plaintiff or otherwise made aware of the above events and circumstances, each
8  defendant failed and/or refused to take appropriate corrective action on
9  Plaintiff's behalf despite possessing sufficient rank, responsibility, and
10 opportunity to do so.

11    67.  As a result, the named defendants personally participated in
12 causing and/or allowing Plaintiff to suffer violation(s) of at least his
13 following constitutional right(s): to have him and his outside correspondents
14 not be inhibited in their sending and receiving of personal mail; to not be
15 retaliated against for seeking redress of grievances; to be free from
16 unreasonable seizure of property; to not suffer unauthorized deprivation of
17 personal property, protected liberty, and related privileges and immunities
18 without Due Process; to not be denied Equal Protection of law; to be free from
19 intentional and negligent infliction of mental anguish and emotional distress;
20 and to not be treated with such callous, reckless, and deliberate indifference
21 toward the secured rights he has under the Constitution, statutes, and
22 regulations of the United States and of the State of California.

23                                **Claim 10**

24          DEFENDANT VARIZ VIOLATED PLAINTIFF'S RIGHTS UNDER STATE
            LAW AND THE U.S. CONSTITUTION'S FIRST, EIGHTH, AND
25          FOURTEENTH AMENDMENTS BY CAUSING AND/OR ALLOWING
            PLAINTIFF TO SUFFER UNLAWFUL OBSTRUCTION OF A PROPERTY
26          GRIEVANCE FOR NO VALID REASON SERVING A LEGITIMATE
            PENOLOGICAL OBJECTIVE WHICH HAD A CHILLING EFFECT ON
27          PLAINTIFF'S RIGHT TO FILE GRIEVANCES.

28    68.  Plaintiff restates and incorporates by reference inclusively the

                                    28

1 | foregoing paragraphs numbered 22, 24-32, 39, and 40.

2 |       69. On 8/23/06, Plaintiff submitted an administrative grievance seeking
3 | to be reunited with a missing box of legal materials that he had been unlawfully
4 | separated from ever since being temporarily transferred out to court three weeks
5 | earlier.

6 |       70. On 8/24/06, defendant VARIZ arbitrarily, capriciously, and
7 | otherwise unlawfully rejected Plaintiff's grievance, falsely and threateningly
8 | writing on the rejection notice: "Do not send any more appeals on this issue to
9 | any staff. You have already attempted to circumvent the appeal process by doing
10 | so. This is your abuse warning."

11 |       71. On 8/27/06 and 9/7/06, Plaintiff sought clarification from
12 | defendant VARIZ on this and other such instances of VARIZ and defendant MEDINA
13 | causing and/or allowing Plaintiff's and other prisoners' administrative
14 | grievances to be thus and similarly rejected for arbitrary and capricious
15 | reasons not supported by any promulgated regulation(s) within the CDCr's
16 | established grievance procedures. VARIZ, however, failed to answer or even
17 | acknowledge either of Plaintiff's written requests for clarification.

18 |       72. Thus defendant VARIZ, by and through such misconduct, personally
19 | caused or allowed Plaintiff to suffer violation(s) of at least his following
20 | constitutional right(s): to petition the government for a redress of grievances;
21 | to be afforded meaningful and unimpeded court access; to not be threatened with
22 | adverse action merely for exercising protected rights; to not be deprived of
23 | protected liberty without Due Process; to not be denied Equal Protection of law;
24 | to be free from intentional and negligent infliction of mental anguish and
25 | emotional distress; and to not be treated with such callous, reckless, and
26 | deliberate indifference toward the secured rights he has under the Constitution,
27 | statutes, and regulations of the United States and of the State of California.
28 | ///

29

1

**Claim 11**

2

3

4

5

DEFENDANTS LEE-1 AND DOE-7 VIOLATED PLAINTIFF'S RIGHTS
UNDER STATE LAW AND THE U.S. CONSTITUTION'S EIGHTH AND
FOURTEENTH AMENDMENTS BY CAUSING AND/OR ALLOWING
PLAINTIFF TO SUFFER FOUR MONTHS WITHOUT PRESCRIBED
MEDICATION FOR NO VALID REASON SERVING A LEGITIMATE
PENOLOGICAL OBJECTIVE.

6

7

73. Plaintiff restates and incorporates by reference inclusively the
foregoing paragraphs numbered 36-42.

8

9

10

74. In September of 2006, Plaintiff was seen by a doctor at SVSP for
the chronic pain in his neck and back. The doctor ordered defendant DOE-7 to
provide Plaintiff with an analgesic muscle cream such as BenGay®.

11

12

13

14

15

16

17

18

75. Because Plaintiff was still waiting to receive the prescribed
medication nearly a month later, he submitted a CDCr form 7362 Health Care
Services Request to defendant DOE-7 on 10/5/06. As a result, Plaintiff was seen
by a second doctor on 10/16/07, who further ordered DOE-7 to provide Plaintiff
with the BenGay®-type muscle cream. DOE-7, however, caused and/or allowed
Plaintiff to instead be provided with a mentholated petroleum ointment similar
to Vick's® Vapor Rub, which provided no relief whatsoever to Plaintiff pain and
suffering.

19

20

21

22

76. On 10/18/06, 11/8/06, 12/4/06, and 12/19/06, Plaintiff further
reported the matter to DOE-7 and defendant LEE-1, but it was not until 1/10/07
that Plaintiff finally received the medication that had initially been
prescribed four months earlier.

23

24

25

26

27

77. Thus, although defendants DOE-7 and LEE-1 were personally informed
by Plaintiff or otherwise made aware of the above events and circumstances, both
defendants failed and/or refused to take appropriate corrective action on
Plaintiff's behalf despite possessing sufficient rank, responsibility, and
opportunity to do so.

28

78. As a result, defendants DOE-7 and LEE-1 personally participated in

30

1 || causing and/or allowing Plaintiff to suffer violation(s) of at least his
2 || following constitutional right(s): to be free from cruel and unusual punishment;
3 || to not be denied medications and other treatment needs prescribed for him by
4 || doctors; to not be deprived of personal property and protected liberty without
5 || Due Process; to not be denied Equal Protection of law; to be free from
6 || intentional and negligent infliction of mental anguish and emotional distress;
7 || and to not be treated with such callous, reckless, and deliberate indifference
8 || toward the secured rights he has under the Constitution, statutes, and
9 || regulations of the United States and of the State of California.

10

## Claim 12

11

12

13

14

DEFENDANTS EVANS, GRANNIS, JONES, KRENKE, MANUEL,
NEOTTI, OVERSTREET, READ, THOMAS-1, TILTON, AND WOODFORD
VIOLATED PLAINTIFF'S RIGHTS UNDER STATE LAW AND THE U.S.
CONSTITUTION'S FIRST, EIGHTH, AND FOURTEENTH AMENDMENTS
BY CAUSING AND/OR ALLOWING PLAINTIFF TO SUFFER DENIAL OF
HIS CONFIDENTIAL MAIL RIGHTS UNDER STATE LAW FOR NO
VALID REASON SERVING A LEGITIMATE PENOLOGICAL OBJECTIVE.

15          79.  Plaintiff restates and incorporates by reference inclusively
16 || the foregoing paragraphs numbered 1-14, and 33-35.

17          80.  On 2/23/06, Plaintiff sent a written inquiry asking defendant
18 || WOODFORD to clarify whether 15CCR § 3141(c)(3) authorizes mail addressed to the
19 || warden and/or the warden's staff members to be treated in accordance with 15CCR
20 || § 3142 as "confidential correspondence" even if/when mailed intraprison rather
21 || than outside the prison and back in through the United States Postal Service.

22          81.  On 4/10/06, defendant WOODFORD caused and/or allowed defendant
23 || OVERSTREET to arbitrarily and otherwise falsely intimate to Plaintiff that
24 || although such mail is still considered confidential correspondence regardless of
25 || whether it is sent intraprison or the USPS, 15CCR § 3141(c)(3) "does not apply
26 || to all staff at Salinas Valley State Prison." Plaintiff therefore addressed the
27 || erroneous interpretation of 15CCR § 3141(c)(3) to OVERSTREET directly, but
28 || OVERSTREET failed to answer or even acknowledge Plaintiff's second written

31

1 | communication.

2 | 82. On 10/22/06, Plaintiff submitted into the SVSP mail system as
3 | confidential intraprison correspondence a 3-page memo addressed to a Facility
4 | "B" Visitation Officer who had physically, sexually, and psychologically
5 | mistreated and otherwise abused Plaintiff the day before merely because he had
6 | lawfully conducted himself in the visiting room pursuant to and in accordance
7 | with his guaranteed rights under state law and the U.S. Constitution's First and
8 | Fourteenth Amendments.

9 | 83. Despite Plaintiff's protected liberty in sending the memo to the
10 | visitation officer as confidential correspondence under 15CCR § 3141(c)(3),
11 | defendant KRENKE caused and/or allowed the envelope to be returned to Plaintiff
12 | unmailed that same night.

13 | 84. Although defendants EVANS, GRANNIS, JONES, KRENKE, MANUEL, NEOTTI,
14 | OVERSTREET, READ, THOMAS-1, TILTON, and WOODFORD were personally informed by
15 | Plaintiff or otherwise made aware of the above events and circumstances, each
16 | defendant failed and/or refused to take appropriate corrective action on
17 | Plaintiff's behalf despite possessing sufficient rank, responsibility, and
18 | opportunity to do so.

19 | 85. Thus the named defendants personally participated in causing and/or
20 | allowing Plaintiff to suffer violation(s) of at least his following
21 | constitutional right(s): to freely express himself; to send confidential
22 | communications to designated government personnel; to not be deprived of
23 | protected liberty without Due Process; to not be denied Equal Protection of law;
24 | to be free from intentional and negligent infliction of mental anguish and
25 | emotional distress; and to not be treated with such callous, reckless, and
26 | deliberate indifference toward the secured rights he has under the Constitution,
27 | statutes, and regulations of the United States and of the State of California.

28 | ///

32

1

### Claim 13

DEFENDANTS BACKLIN, DOE-5, FOX, GRANNIS, HURDLE, LEE-1, MOSS, PENNINGTON, POWERS, TILTON, AND WALL VIOLATED PLAINTIFF'S RIGHTS UNDER STATE LAW, THE REHABILITATION ACT, THE AMERICANS WITH DISABILITIES ACT, AND THE U.S. CONSTITUTION'S FIRST, EIGHTH, AND FOURTEENTH AMENDMENTS BY CAUSING AND/OR ALLOWING PLAINTIFF TO SUFFER **RETALIATORY** DENIAL OF PRESCRIBED MEDICATION AND FALSIFIED DOCUMENTATION IN HIS PERMANENT RECORD FOR NO VALID REASON SERVING A LEGITIMATE PENOLOGICAL OBJECTIVE.

86. Plaintiff restates and incorporates by reference inclusively the foregoing paragraphs numbered 36-42 and 73-78.

87. On the morning of 11/16/06, defendants MOSS and POWERS had to dispense morning medications at each individual prisoners' cell because heavy fog conditions precluded prisoners from walking to the medical clinic's dispensary window as usual.

88. As soon as MOSS and POWERS entered Plaintiff's housing unit, the control officer instructed over the building's loudspeaker that Plaintiff and all other prisoners receiving medications were to turn on their cell lights and have a cup of water ready.

89. While Plaintiff was watching his television with his cell light on and a cup of water ready as instructed, MOSS walked quickly past his cell and said, "Mr. K'nAPP doesn't want his meds 'cause he's not standing at his door." Plaintiff therefore put his mouth to an opening beside his cell door and shouted out to MOSS that she had missed giving him his medication, but MOSS shouted back to Plaintiff from many cells away that Plaintiff should have been standing right at his cell door if he had truly wanted his medication that morning.

90. Since prisoners are not required by any CDCr rule or regulation to be standing at their cell doors in order to get a nurse to stop and dispense prescribed medications, Plaintiff shouted to MOSS through the opening next to his cell door that if she were to leave the building without giving him his medication he would be documenting and reporting her misconduct, to which

33

1  defendant POWERS shouted back to Plaintiff, "Hell, she [MOSS] ain't scared of

2  you writing her up!"

3      91.  After both MOSS and POWERS then caused Plaintiff to suffer the

4  mental and physical discomfort of not being given his morning dose of

5  medication, Plaintiff documented and reported the matter that night not only

6  through an administrative staff complaint, but also in writing to defendants

7  EVANS and LEE-1 and to the California Board of Vocational Nursing and

8  Psychiatric Technicians.

9      92.  Later, MOSS entered into Plaintiff's permanent medical chart a CDCr

10 form 7230 on which she falsely stated that Plaintiff had "continued to yell out

11 in a threatening manner" after disobeying a direct order by the control officer

12 to be standing "at the door" in order to receive his medication that morning.

13     93.  Because the fog had eventually cleared up by around 10:00 a.m. that

14 same morning, Plaintiff later stood in line outside the clinic to receive his

15 noon dose of Effexor® at the dispensary. When he got to the window and saw that

16 MOSS was dispensing medications, Plaintiff neither did or said anything more

17 than show MOSS his identification card and tell MOSS his housing location. After

18 MOSS gave him his pill, Plaintiff put it on his tongue and washed it down with

19 water from his cup right there in front of MOSS pursuant to and in accordance

20 with the CDCr's relevant procedure which prisoners must follow when receiving

21 Nurse Administered Medications (hereafter "NAM") such as the Effexor® being

22 taken by Plaintiff.

23     94.  After thus properly taking his noon dose of medication in the

24 precise manner required by the CDCr's "NAM" procedure, Plaintiff said "Thank

25 you" to MOSS and started heading back to his housing unit. But after Plaintiff

26 had walked no more than 30 yards, MOSS had an officer call him into the clinic

27 and make him sit down in a chair, whereupon MOSS and defendant BACKLIN then

28 railed against Plaintiff for several minutes in a concerted effort to dissuade

34

1    him from documenting and reporting the above misconduct that MOSS had committed
2    against him earlier that morning.

3         95.    In so threatening and otherwise harassing Plaintiff, BACKLIN
4    pointed her finger in Plaintiff's face and attempted to brainwash him into
5    believing her blatant lie that he was obligated to automatically comply with the
6    CDCr's Direct Observation Therapy (hereafter "DOT") procedure for prisoners on
7    highly controlled medications or who have a history of hoarding, selling, or
8    otherwise abusing their prescribed medications. When Plaintiff countered that
9    routine DOT procedures were inapplicable to him not only because of the NAM
10   specifically indicated on his prescription but also because he had no history
11   whatsoever of abusing medications, BACKLIN conspiratorily told MOSS, "Well,
12   we'll just give him a 115 [disciplinary writeup] and put him on DOT then!"

13        96.    Although defendants BACKLIN, DOE-5, FOX, GRANNIS, HURDLE, LEE-1,
14   MOSS, PENNINGTON, POWERS, TILTON, AND WALL were personally informed by Plaintiff
15   or otherwise made aware of the above events and circumstances, each defendant
16   failed and/or refused to take appropriate corrective action on Plaintiff's
17   behalf despite possessing sufficient rank, responsibility, and opportunity to do
18   so.

19        97.    Thus the named defendants personally participated in causing and/or
20   allowing Plaintiff to suffer violation(s) of at least his following
21   constitutional right(s): to freely express himself; to not be retaliated against
22   for exercising or threatening to exercise his right to petition the government
23   for a redress of grievances; to be free from cruel and unusual punishment; to
24   not be denied medication prescribed for him by a doctor; to not have falsified
25   records maintained by the CDCr against him; to not be made subject to arbitrary
26   and capricious staff whims; to not be deprived of guaranteed personal property,
27   protected liberty, and related immunities and privileges without Due Process; to
28   not be denied Equal Protection of law; to be free from intentional and negligent

1  infliction of mental anguish and emotional distress; and to not be treated with
2  such callous, reckless, and deliberate indifference toward the secured rights he
3  has under the Constitution, statutes, and regulations of the United States and
4  of the State of California.

## Claim 14

DEFENDANTS BACKLIN, DOE-5, EVANS, FOX, GRANNIS, HALL, HENLEY, HURDLE, JONES, KRENKE, LEE-1, MOSS, NEOTTI, PENNINGTON, POWERS, SOTELO, THOMAS-1, TILTON, TREXLER, VARIZ, AND WALL VIOLATED PLAINTIFF'S RIGHTS UNDER STATE LAW AND THE U.S. CONSTITUTION'S FIRST, FOURTH, EIGHTH, AND FOURTEENTH AMENDMENTS BY CAUSING AND/OR ALLOWING PLAINTIFF TO SUFFER A CONTINUOUS CAMPAIGN OF **RETALIATORY** OPPRESSION FOR NO VALID REASON SERVING A LEGITIMATE PENOLOGICAL OBJECTIVE.

98. Plaintiff restates and incorporates by reference inclusively the foregoing paragraphs numbered 86-97.

99. On 11/17/06, defendant POWERS verbally harassed Plaintiff about the preceding day's events, falsely represented to him that a printed copy of the CDCr's DOT procedure was actually the CDCr's NAM procedure relevant to him, and attempted to incite prisoners and custody staff against him later that evening.

100. On 11/19/06, defendant MOSS first executed an arbitrary, capricious, and otherwise illegal and unreasonable search of the inside of Plaintiff's mouth, then refused to give Plaintiff his second prescribed dose of medication for that day, and then retaliated against Plaintiff with a falsified Rules Violation Report (hereafter "RVR") that she authored after and because Plaintiff documented and reported the misconduct she had committed against him on 11/16/06. Then, when dispensing medications on 11/22/06, 11/29/06, 12/7/06, 12/10/06, 12/12/06, and 12/13/06, MOSS further executed arbitrary, capricious, and otherwise illegal and unreasonable searches of the inside of Plaintiff's mouth.

101. On 12/6/06, defendant SOTELO arbitrarily and capriciously found Plaintiff guilty of the **retaliatory** disciplinary charge that defendant MOSS had

**falsely** made against him on 11/19/06. In finding Plaintiff guilty, SOTELO: (a) refused to honor Plaintiff's right under 15CCR § 3320(1) (hereafter 3320"(L)") to submit documentary evidence in defense or mitigation of the charge; (b) violated Plaintiff's right under 15CCR §§ 3315(e)(5), 3320(h), and 3320(j) to be present when SOTELO questioned MOSS, defendant POWERS, defendant BACKLIN, and other nursing staff during the disciplinary hearing; (c) violated Plaintiff's right under 15CCR § 3320(L) to be found **not** guilty based on the "preponderance of the evidence" standard; and (d) committed perjury in violation of California Penal Code §§ 118.1 and 134 by **falsely** stating on his report of the hearing that Plaintiff had pled guilty to the charge. Upon then auditing and reviewing the disciplinary report before it had become finalized, defendants JONES and NEOTTI caused and/or allowed the adverse action to remain against Plaintiff exactly as adjudicated by SOTELO.

102. On 12/24/06, not only did defendant HENLEY also maliciously and vindictively execute an arbitrary, capricious, and otherwise illegal and unreasonable search of the inside of Plaintiff's mouth, but also HENLEY unlawfully did the same to only the prisoners who had been standing in line directly behind Plaintiff in an attempt to incite them against Plaintiff.

103. Although defendants BACKLIN, DOE-5, EVANS, FOX, GRANNIS, HALL, HENLEY, HURDLE, JONES, KRENKE, LEE-1, MOSS, NEOTTI, PENNINGTON, POWERS, SOTELO, THOMAS-1, TILTON, TREXLER, VARIZ, and WALL were personally informed by Plaintiff or otherwise made aware of the above events and circumstances, each defendant failed and/or refused to take appropriate corrective action on Plaintiff's behalf despite possessing sufficient rank, responsibility, and opportunity to do so.

104. Thus the named defendants personally participated in causing and/or allowing Plaintiff to suffer violation(s) of at least his following constitutional right(s): to freely express himself; to not be retaliated against

37

1  for exercising or threatening to exercise his right to petition the government
2  for a redress of grievances; to be free from cruel and unusual punishment; to
3  not be denied medication prescribed for him by a doctor; to not have falsified
4  records maintained by the CDCr against him; to not be made subject to arbitrary
5  and capricious staff whims; to not be deprived of guaranteed personal property,
6  protected liberty, and related immunities and privileges without Due Process; to
7  not be denied Equal Protection of law; to be free from intentional and negligent
8  infliction of mental anguish and emotional distress; and to not be treated with
9  such callous, reckless, and deliberate indifference toward the secured rights he
10  has under the Constitution, statutes, and regulations of the United States and
11  of the State of California.

12  **Claim 15**

13  DEFENDANTS BACKLIN, CHURLESON, EVANS, GRANNIS, JANSEN,
    JONES, KRENKE, MEDINA, MOSS, NEOTTI, POWERS, SOTELO,
14  THOMAS-2, AND VARIZ VIOLATED PLAINTIFF'S RIGHTS UNDER
    STATE LAW, THE REHABILITATION ACT, THE AMERICANS WITH
15  DISABILITIES ACT, AND THE U.S. CONSTITUTION'S FIRST,
    EIGHTH, AND FOURTEENTH AMENDMENTS BY CAUSING AND/OR
16  ALLOWING PLAINTIFF TO SUFFER RETALIATORY DENIAL OF
    FEDERALLY MANDATED MINIMUM OUTDOOR EXERCISE TIME FOR NO
17  VALID REASON SERVING A LEGITIMATE PENOLOGICAL OBJECTIVE.

18       105. Plaintiff restates and incorporates by reference inclusively the
19  foregoing paragraphs numbered 86-104.

20       106. Upon finding Plaintiff guilty of the retaliatory disciplinary
21  charge that defendants BACKLIN, JONES, MOSS, NEOTTI, and POWERS caused and/or
22  allowed Plaintiff to suffer, defendant SOTELO assessed against Plaintiff a
23  30-day loss of telephone use, dayroom access, receipt of vendor packages, and
24  full canteen privileges. SOTELO also ordered Plaintiff to receive "Limited Yard
25  Access Per 'C' Status."

26       107. According to this Court, "each prisoner shall be provided with
27  outdoor exercise at least one (1) hour every day or two (2) hours every other
28  day, for a minimum total of eight (8) hours a week, or at least three (3) times

38

1   a week, for a minimum total of ten (10) hours a week." (See, <u>Toussaint v. Rushen</u>
2   (1983) 553 F.Supp. 1365, 1385.)

3       108. However, while Plaintiff was confined to his cell on "C" status
4   over the next 30 days, defendants BACKLIN, CHURLESON, EVANS, GRANNIS, JANSEN,
5   JONES, KRENKE, MEDINA, MOSS, NEOTTI, POWERS, SOTELO, THOMAS-2, and VARIZ caused
6   and/or allowed him – and all other SVSP prisoners on "C" status – to receive
7   **less** than a mere **three hours** of outdoor exercise time **per week** while other
8   prisoners received as many as **45½ hours** of outdoor exercise time per week (i.e.,
9   from 0900 to 1530 hours, seven days a week) pursuant to and in accordance with
10   15CCR § 3044(d-f).

11       109. This 30-day denial of the federally mandated minimum outdoor
12   exercise time was especially hard on Plaintiff because regular outdoor exercise
13   has been and is prescribed by Plaintiff's treating medical and psychiatric
14   doctors as a meaningful and effective way to treat and manage Plaintiff's
15   diagnosed physical and mental condition, as well prevent any unnecessary
16   deterioration thereof.

17       110. Although defendants BACKLIN, CHURLESON, EVANS, GRANNIS, JANSEN,
18   JONES, KRENKE, MEDINA, MOSS, NEOTTI, POWERS, SOTELO, THOMAS-2, and VARIZ were
19   personally informed by Plaintiff and/or were otherwise made aware of the above
20   events and circumstances, each defendant failed and/or refused to take
21   appropriate corrective action on Plaintiff's behalf despite possessing
22   sufficient rank, responsibility, and opportunity to do so.

23       111. Thus the named defendants personally participated in causing and/or
24   allowing Plaintiff to suffer violation(s) of at least his following
25   constitutional right(s): to freely express himself; to to not be retaliated
26   against for exercising or threatening to exercise his protected right to
27   petition the government for a redress of grievances; to be free from cruel and
28   unusual punishment; to not be denied medically necessary treatment and therapy

needs prescribed by doctors; to not be deprived of protected liberty and related privileges and immunities without Due Process; to not be denied Equal Protection of law; to be free from intentional and negligent infliction of mental anguish and emotional distress; and to not be treated with such callous, reckless, and deliberate indifference toward the secured rights he has under the Constitution, statutes, and regulations of the United States and of the State of California.

### Claim 16

DEFENDANTS BALLESSA, BENNETT, CRIZANT, DOE-2, EVANS, HEDGPETH, HURDLE, LEWIS, LOPEZ, SALAZAR, THOMAS-1, TILTON, AND VARIZ VIOLATED PLAINTIFF'S RIGHTS UNDER STATE LAW AND THE U.S. CONSTITUTION'S FIRST, EIGHTH, AND FOURTEENTH AMENDMENTS BY CAUSING AND/OR ALLOWING PLAINTIFF TO SUFFER RETALIATORY FURTHER OBSTRUCTION OF OUTGOING CONFIDENTIAL MAIL FOR NO VALID REASON SERVING A LEGITIMATE PENOLOGICAL OBJECTIVE.

112. Plaintiff restates and incorporates by reference inclusively the foregoing paragraphs numbered 11-14 and 33-35.

113. From 1/2/07 to 1/24/07, defendants BALLESSA, BENNETT, CRIZANT, DOE-2, EVANS, HEDGPETH, HURDLE, LEWIS, LOPEZ, SALAZAR, THOMAS-1, TILTON, and VARIZ caused and/or allowed Plaintiff's outgoing confidential mail to attorneys, state and federal courts, and government officials to be obstructed and returned unmailed to Plaintiff at least 15 times for arbitrary and capricious reasons not supported by any CDCr regulation.

114. Although defendants BALLESSA, BENNETT, CRIZANT, DOE-2, EVANS, HEDGPETH, HURDLE, LEWIS, LOPEZ, SALAZAR, THOMAS-1, TILTON, and VARIZ were personally informed by Plaintiff and/or were otherwise made aware of the above events and circumstances, each defendant failed and/or refused to take appropriate corrective action on Plaintiff's behalf despite possessing sufficient rank, responsibility, and opportunity to do so.

115. Thus the named defendants personally participated in causing and/or allowing Plaintiff to suffer violation(s) of at least his following

40

1  constitutional right(s): to not be impeded in his sending of mail; to petition
2  the government for a redress of grievances; to be afforded meaningful and
3  unimpeded court access; to not be retaliated against for exercising protected
4  rights; to not be subjected to arbitrary and capricious staff whims; to not be
5  deprived of protected liberty without Due Process; to not be denied Equal
6  Protection of law; to be free from intentional and negligent infliction of
7  mental anguish and emotional distress; and to not be treated with such callous,
8  reckless, and deliberate indifference toward the secured rights he has under the
9  Constitution, statutes, and regulations of the United States and of the State of
10 California.

11                              **Claim 17**

12              DEFENDANTS ARCEO, GRANNIS, GROUNDS, JONES, NEGRON,
                NEOTTI, AND THOMAS-2 VIOLATED PLAINTIFF'S RIGHTS UNDER
13              STATE LAW, THE REHABILITATION ACT, THE AMERICANS WITH
                DISABILITIES ACT, THE ARMSTRONG REMEDIAL PLAN, AND THE
14              U.S. CONSTITUTION'S FIRST, EIGHTH, AND FOURTEENTH
                AMENDMENTS BY CAUSING AND/OR ALLOWING
15              PLAINTIFF'S REQUEST FOR A REASONABLE AND NECESSARY
                DISABILITY ACCOMMODATION TO BE DENIED FOR NO VALID
16              REASON SERVING A LEGITIMATE PENOLOGICAL OBJECTIVE.

17      116. Plaintiff restates and incorporates by reference inclusively the
18  foregoing paragraphs numbered 24-28 and 38.

19      117. Because of Plaintiff's verified writing impairment, he requires a
20  word-processing personal typewriter with sufficient internal memory so he can
21  input and edit by keyboard all drafts of his many personal and legal documents
22  before printing out final versions. (It would be too physically, mentally, and
23  financially difficult and draining for Plaintiff to write **anything** – let alone
24  all the personal and legal writing he does now – if in order to do so he had to
25  use a regular typewriter containing no memory or word-processing capability.)
26  Yet to avoid being a financial burden on his loved ones, Plaintiff has always
27  made do in prison with the Smith Corona WordSmith 250, a $140 personal
28  typewriter that has 29 kilobytes of nonremovable internal memory, a 16-character

1 | display window, and very limited word-processing capability.

2 | 118. At the beginning of March 2007, the replacement WordSmith 250 that
3 | Plaintiff's family had been allowed to purchase for Plaintiff in April of 2006
4 | started malfunctioning. Accordingly, Plaintiff submitted a CDCr form 1824
5 | Reasonable Accommodation Request asking that either a prisoner be allowed to try
6 | fixing his typewriter at SVSP or his family be allowed to purchase for him a
7 | particular word-processing typewriter that contains 128 kilobytes of
8 | nonremovable internal memory.

9 | 119. However, in spite of the very specific guarantee at Section II.H of
10 | the Armstrong Remedial Plan that all CDCr form 1824 Reasonable Accommodation
11 | Requests **shall** be granted, defendants ARCEO, GRANNIS, GROUNDS, JONES, NEGRON,
12 | NEOTTI, and THOMAS-2 caused and/or allowed Plaintiff's 3/5/07 request for such a
13 | reasonable and necessary request to **not** be granted in relevant part for not a
14 | single one of the only four specific reasons at § II.H of the Armstrong Remedial
15 | Plan which authorize a CDCr form 1824 request for disability accommodation to be
16 | denied.

17 | 120. Thus the named defendants personally participated in causing and/or
18 | allowing Plaintiff to suffer violation(s) of at least his following
19 | constitutional right(s): to freely express himself in writing; to be afforded
20 | meaningful and unimpeded ability to freely petition the government for a redress
21 | of grievances and access the courts; to have his request for a reasonable and
22 | necessary accommodation of his verified disability granted pursuant to and in
23 | accordance with the Rehabilitation Act, the Americans with Disabilities Act, the
24 | Armstrong Remedial Plan, and 15CCR § 3085; to not be denied a reasonable and
25 | necessary medical accommodation concerning his verified disability; to not be
26 | deprived of medically necessary personal property, protected liberty, and
27 | related privileges and immunities without Due Process; to not be denied Equal
28 | Protection of law; to be free from intentional and negligent infliction of

42

1 | mental anguish and emotional distress; and to not be treated with such callous,
2 | reckless, and deliberate indifference toward the secured rights he has under the
3 | Constitution, statutes, and regulations of the United States and of the State of
4 | California.

5 | ### Claim 18

6 | DEFENDANTS GRANNIS, GROUNDS, JONES, KNAPP, MELVIN,
NEOTTI, ROJAS, SULLIVAN, AND VARIZ VIOLATED PLAINTIFF'S
7 | RIGHTS UNDER STATE LAW, THE REHABILITATION ACT, THE
AMERICANS WITH DISABILITIES ACT, THE ARMSTRONG REMEDIAL
8 | PLAN, AND THE U.S. CONSTITUTION'S FIRST, EIGHTH, AND
FOURTEENTH AMENDMENTS BY CAUSING AND/OR ALLOWING
9 | PLAINTIFF'S REQUEST FOR A REASONABLE AND NECESSARY
DISABILITY ACCOMMODATION TO BE DENIED FOR NO VALID
10 | REASON SERVING A LEGITIMATE PENOLOGICAL OBJECTIVE.

11 | 121. Plaintiff restates and incorporates by reference inclusively the
12 | foregoing paragraphs numbered 1-4, 24-28, 38-40, 69, and 116-120.

13 | 122. When Plaintiff arrived at SVSP on 10/18/05, he was representing
14 | himself in several legal actions seeking vindication of the various law and
15 | rights violations he has suffered at five different prisons since the year 2000.
16 | More recently, particularly during the year 2007, Plaintiff has been and/or
17 | still is litigating the following cases without assistance from counsel:

18 | (a) K'nAPP v. Hickman, et al.     CIV-05-2520   U.S. Dist. Ct., E.D. Cal.;
     (b) K'nAPP v. Knowles, et al.     07-16225      U.S. 9th Cir. Ct. of Appeals;
19 | (c) K'nAPP v. Harrison, et al.    CV-06-7702    U.S. Dist. Ct., E.D. Cal.;
     (d) K'nAPP v. Adams, et al.       CIV-06-7702   U.S. Dist. Ct., C.D. Cal.;
20 | (e) In re K'nAPP                   S156134       California Supreme Court;
     (f) In re K'nAPP                   H032148       Cal. 6th Dist. Ct. of Appeal;
21 | (g) In re K'nAPP                   HC 5577       Cal. Super. Ct., Monterey Co.;
     (h) In re K'nAPP                   HC 5725       Cal. Super. Ct., Monterey Co.;
22 | (i) In re K'nAPP                   HC 5790       Cal. Super. Ct., Monterey Co.;
     (j) In re K'nAPP                   HC 5844       Cal. Super. Ct., Monterey Co.;
23 | (k) In re Gonzalez/K'nAPP          HC 5918       Cal. Super. Ct., Monterey Co.;
     (l) In re Gonzalez                 HC 6004       Cal. Super. Ct., Monterey Co.;
24 | (m) In re Lopez                    HC ____       Cal. Super. Ct., Monterey Co.;

25 | 123. The SVSP prisoner law library where Plaintiff is housed provides
26 | most – but not all – of the legal books required by this Court (see, Gilmore v.
27 | Lynch (10/16/72) No. 4587, Order Directing Adoption of Regulations to Implement
28 | Previous Order Granting Relief), yet in electronic format on computers rather

43

1 | than bound.

2 | 124. In order for Plaintiff to conduct meaningful legal research while
3 | in the law library - regardless of whether from books that are bound or in
4 | electronic format - he must be able to produce effective notes that he can take
5 | with him back to his cell. However, his verified writing impairment
6 | substantially limits his ability to perform the major life activity of writing
7 | painlessly with pen or pencil.

8 | 125. From October 2005 until around March 2007, the law librarian
9 | accommodated Plaintiff's physical disability by allowing him to simply highlight
10 | his notes using the electronic law library's built-in <NOTATIONS> feature and
11 | then transfer those highlighted notations to a diskette from which the law
12 | librarian would then print out Plaintiff's page or two of notes. This
13 | arrangement not only was a reasonable, necessary, available, and practical means
14 | of accommodating Plaintiff's disability, but also it proved to be more
15 | economical than printing out several entire cases for Plaintiff to take home and
16 | read.

17 | 126. After that particular law librarian retired at the beginning of
18 | 2007, however, Plaintiff soon found it necessary to initiate and pursue a CDCr
19 | form 1824 Reasonable Accommodation Request because the new and subsequent
20 | librarian - defendants ROJAS and CANCHOLA, respectively - refused to thus
21 | further accommodate Plaintiff's verified writing impairment.

22 | 127. At present, SVSP has set up an old electric typewriter next to one
23 | of the computers for Plaintiff to "take notes" with when trying to conduct legal
24 | research. Although that typewriter certainly offers a less painful alternative
25 | for Plaintiff to take notes, it does not fully accommodate his verified
26 | disability because his back and neck problems make it extremely difficult, as
27 | well as physically and mentally demanding on Plaintiff to sit and produce notes
28 | on the typewriter while simultaneously trying to find, read, and comprehend the

1  cases and annotated statutes within the separate computer's electronic law
2  library. (Plaintiff also is not a very fast typist so trying to use the
3  typewriter is very time-consuming as well since he is nowhere near as able to
4  separately type out notes while trying to conduct meaningful computer research
5  as quickly as other prisoners - and even he himself, with significant pain - can
6  write them out by hand.)

7      128. Yet although defendants GRANNIS, GROUNDS, JONES, KNAPP, MELVIN,
8  NEOTTI, ROJAS, SULLIVAN, and VARIZ were personally informed by Plaintiff and/or
9  were otherwise made aware of the above events and circumstances, each defendant
10 failed and/or refused to take appropriate corrective action on Plaintiff's
11 behalf despite possessing sufficient rank, responsibility, and opportunity to do
12 so.

13     129. Furthermore, in spite of the very specific guarantee at Section
14 II.H of the Armstrong Remedial Plan that all CDCr form 1824 Reasonable
15 Accommodation Requests **shall** be granted, the named defendants caused and/or
16 allowed Plaintiff's 4/5/07 request to **not** be granted in relevant     part for
17 not a single one of the only four reasons at § II.H of the Armstrong Remedial
18 Plan that authorize a prisoner's disability accommodation request to be denied.

19     130. Thus the named defendants personally participated in causing and/or
20 allowing Plaintiff to suffer violation(s) of at least his following
21 constitutional right(s): to be afforded meaningful and unimpeded ability to
22 freely petition the government for a redress of grievances and access the
23 courts; to have his request for a reasonable and necessary accommodation of his
24 verified disability granted pursuant to and in accordance with the
25 Rehabilitation Act, the Americans with Disabilities Act, the Armstrong Remedial
26 Plan, and 15CCR § 3085; to not be denied a reasonable and necessary medical
27 accommodation of his verified physical disability; to not be deprived of
28 medically necessary protected liberty and related privileges and immunities

1  without Due Process; to not be denied Equal Protection of law; to be free from
2  intentional and negligent infliction of mental anguish and emotional distress;
3  and to not be treated with such callous, reckless, and deliberate indifference
4  toward the secured rights he has under the Constitution, statutes, and
5  regulations of the United States and of the State of California.

### Claim 19

DEFENDANTS ARCEO, BURK, CANCHOLA, EVANS, GRANNIS, KNAPP, MEDINA, MELVIN, NEOTTI, AND ROJAS VIOLATED PLAINTIFF'S RIGHTS UNDER STATE LAW AND THE U.S. CONSTITUTION'S FIRST, EIGHTH, AND FOURTEENTH AMENDMENTS BY CAUSING AND/OR ALLOWING PLAINTIFF TO SUFFER RETALIATORY DENIAL OF PRIORITY ACCESS TO THE LAW LIBRARY AND DENIAL OF LEGAL COPIES REQUIRED BY COURT RULES FOR NO VALID REASON SERVING A LEGITIMATE PENOLOGICAL OBJECTIVE.

12     131. Plaintiff restates and incorporates by reference inclusively the
13  foregoing paragraphs numbered 1-4, 116-120, and 121-130.

14     132. From October 2006 through March of 2007, Plaintiff documented and
15  respectfully reported several times in writing to defendants BURK, EVANS, and
16  MELVIN various deficiencies he perceived concerning the prisoner law library
17  where he was housed at SVSP. (Including a complete lack of prisoners' access to
18  Shepard's Citations and Statutes, as well as that certain electronic "books" of
19  the Gilmore collection were missing or not properly installed or updated on the
20  research computers.)

21     133. In retaliatory response to Plaintiff and other prisoners thus and
22  similarly exercising their protected right to petition for redress of
23  grievances, defendants BURK, CANCHOLA, KNAPP, MELVIN, and ROJAS caused and/or
24  allowed Plaintiff and other pro se prisoner litigants with looming legal
25  deadlines of 30 days or less to be arbitrarily and capriciously **limited to** a
26  mere two hours in the law library per week and thus **denied** the many other
27  remaining hours of available access time despite the very brief periods in which
28  Plaintiff and other prisoners were entitled to **"Priority Library User"** status

1  under 15CCR § 3122(a) and DOM § 53060.16.

2      134. Moreover, defendants BURK, CANCHOLA, KNAPP, MELVIN, and ROJAS
3  further violated 15CCR § 3122(a) and DOM § 53060.16 by causing and/or allowing
4  **nonpriority** prisoners -i.e., those who merely had "**General** Library User" status
5  and **no** pending legal deadlines of 30 days or less - to be given access to the
6  law library ahead of, rather than, and over Plaintiff and other **PLU** prisoners
7  who did have **imminent** court deadlines of 30 days or less currently pending.

8      135. Being thus generally limited to no more than two hours per week in
9  the law library, while needing and trying hard to meet often several
10 simultaneously occurring deadlines in different cases as BURK, CANCHOLA, KNAPP,
11 MELVIN, and ROJAS caused and/or allowed many hours of library access per week to
12 be given to prisoners **without** such deadlines instead, not only caused Plaintiff
13 to suffer significant stress, anxiety, and despair, but also resulted in
14 Plaintiff having to request so many extensions of time in his cases that he was
15 told by presiding judiciary that no more would be granted.

16     136. Furthermore, in violation of DOM § 14010.21, defendants BURK,
17 CANCHOLA, KNAPP, MELVIN, and ROJAS caused and/or allowed Plaintiff to be
18 arbitrarily and capriciously **denied** any more than just two to three copies of
19 **all** legal documents irrespective of court rules requiring more to effect proper
20 filing and service. This resulted in a federal judge just recently threatening
21 that Plaintiff's "further failure to comply with the Local Rules [regarding
22 copies] may lead to penalties."

23     137. Although defendants ARCEO, BURK, CANCHOLA, EVANS, GRANNIS, KNAPP,
24 MEDINA, MELVIN, NEOTTI, and ROJAS were personally informed by Plaintiff and/or
25 were otherwise made aware of the above events and circumstances, each defendant
26 failed and/or refused to take appropriate corrective action on Plaintiff's
27 behalf despite possessing sufficient rank, responsibility, and opportunity to do
28 so.

138. Thus the named defendants personally participated in causing and/or allowing Plaintiff to suffer violation(s) of at least his following constitutional right(s): to petition the government for a redress of grievances and to have meaningful and unimpeded court *access* pursuant to and in accordance with court rules and the CDCr's governing regulations; to not be subjected to the arbitrary and capricious whims of staff; to have CDCr personnel follow CDCr regulations; to not be retaliated against for the lawful exercise of protected rights by him and other prisoners; to not be deprived of protected liberty without Due Process; to not be denied Equal Protection of law; to be free from intentional and negligent infliction of mental anguish and emotional distress; and to not be treated with such callous, reckless, and deliberate indifference toward the secured rights he has under the Constitution, statutes, and regulations of the United States and of the State of California.

### Claim 20

DEFENDANTS EVANS, GRANNIS, NUCKLES, WATSON, AND WOODFORD VIOLATED PLAINTIFF'S RIGHTS UNDER STATE LAW AND THE U.S. CONSTITUTION'S FIRST, EIGHTH, AND FOURTEENTH AMENDMENTS BY CAUSING AND/OR ALLOWING PLAINTIFF TO SUFFER RETALIATORY AND OTHERWISE UNAUTHORIZED DENIAL OF FREE SPEECH, ASSOCIATION, ASSEMBLY, COMMUNITY, AND SOCIETY WITH OTHERS DURING VISITS FOR NO VALID REASON SERVING A LEGITIMATE PENOLOGICAL OBJECTIVE.

139. Plaintiff restates and incorporates by reference inclusively the foregoing paragraphs numbered 1-4, 43-49, and 82.

140. The CDCr has promulgated and otherwise established various regulations which govern visitation between prisoners and their outside friends and family at all CDCr prisons. Such regulations include the following:

Title 15, Cal. Code of Regs. (15CCR)

**3170. General Visiting.**
(a) These regulations are made in recognition and consideration of the value of inmate visitation as a means of increasing safety in prisons, maintaining family and **community** connections, and preparing

48

inmates for successful release and rehabilitation. It is the intent of these regulations to establish a visiting process in the institutions/facilities of the department that is conducted in as accommodating a manner as possible, subject to the need to maintain order, the safety of persons, the security of the institution/facility, and required prison activities and operation.

Dept. Operations Manual (DOM)

**54020.1 Policy**
The California Department of Corrections (CDC) encourages inmates to develop and maintain healthy family and **community** relationships.... Employees are to be alert, courteous, and professional in their dealings with inmates, inmate visitors, and members of the public. The employee shall maintain a helpful but professional attitude and demeanor.

141. Under such regulations, Plaintiff and his visiting loved ones have made many friends of others within visitation rooms at 10 prisons since Plaintiff started serving his present term 15 years ago. In fact, Plaintiff's mother has recruited many UNION members over the years since 1998 while visiting Plaintiff in prison.

142. After and because defendants ARCEO, EVANS, GRANNIS, HEDGPETH, MANUEL, and NUCKLES caused and/or allowed Plaintiff and Plaintiff's mother to suffer their 6-month forced separation following the ultra vires invention, application, and enforcement by NUCKLES of the arbitrary and capricious dress standard against Plaintiff's mother on 6/17/06 (see ante herein, Claim 8), Plaintiff's mother lawfully organized and conducted a sizeable UNION demonstration in front of SVSP on 8/27/06. The participants of the UNION protest openly denounced to several attending news reporters the oppressive conditions of visitation at SVSP and throughout the CDCr.

143. In retaliatory response to the above UNION demonstration, SVSP visitation officers started telling prisoners and visitors of separate visitation parties that they were no longer allowed to speak to or even greet each other in the visitation room during visitation. SVSP visitation officers

also began to violate DOM § 54020.15 by falsely telling visitors that they were no longer allowed to take home with them from SVSP whatever paper they had been provided to write on during visits. (DOM § 54020.15 specifically mandates that CDCr prisons "shall provide ... notebook paper to be checked out by the adult visitor as needed" and that "the visitor **shall** be allowed to remove the paperwork" from the prison after it has been inspected by staff for contraband "[a]t the conclusion of the visit.") Furthermore, SVSP staff began seizing from all visitors as "contraband" the written name and contact information of Plaintiff's mother and UNION.

144. On 10/21/06, Plaintiff was greeted in the SVSP visitation room by a longtime UNION member and friend to both him and his mother. The elderly woman was there visiting her son while Plaintiff was being visited by his fiancee. During the brief exchange of social pleasantries that ensued in passing, a visitation officer rushed up on them and curtly told them they were not allowed to converse. When Plaintiff then respectfully asked the officer where any support for such a proposition could be found in a rule or regulation of the CDCr, the officer falsely accused Plaintiff of "getting an attitude" and then made him leave his fiancee alone at their table in the visitation room and follow the officer into the stripout room without either Plaintiff or his fiancee being told where Plaintiff was going, why, or whether or when he would return. The officer then locked the door behind them and ordered Plaintiff to remove all of his clothes, stick his unwashed fingers into his mouth, waggle his tongue with his mouth wide open, show the underside of his penis and scrotum, and then bend over and cough while spreading his buttocks wide apart as the officer stood staring at him from no more than three feet directly behind him. Once the humiliating and degrading nude body search was over, the officer asked Plaintiff, "Now do you understand?" and then allowed Plaintiff to get dressed and return to his visitor after Plaintiff falsely agreed he "understood" what

had just occurred. These events adversely affected the remaining several hours of visitation for Plaintiff, his fiancee, and several other prisoners and their visitors who knew and later became aware of what the officer had just done to Plaintiff.

145. However, for nearly a year following Plaintiff's subsequent letter to that particular visitation officer on 10/22/06 (see ante herein at ¶ 82), neither Plaintiff nor any other prisoner or visitor of separate visitation parties suffered any further such harassment or retaliation for lawfully speaking to each other in the visitation room during visitation.

146. Yet once defendant WATSON became the new visitation sergeant sometime in September or October of 2007, Plaintiff, other prisoners, and their respective visitors again started being told that they would suffer disciplinary writeups, termination and suspension of visitation, and other adverse action merely for lawfully greeting each other, exchanging social pleasantries, and/or otherwise speaking to each in the visitation room during visitation.

147. Although defendants EVANS, GRANNIS, NUCKLES, WATSON, and WOODFORD were personally informed by Plaintiff and/or were otherwise made aware of the above events and circumstances, each defendant failed and/or refused to take appropriate corrective action on Plaintiff's behalf despite possessing sufficient rank, responsibility, and opportunity to do so.

148. Thus the named defendants personally participated in causing and/or allowing Plaintiff to suffer violation(s) of at least his following constitutional right(s): to freely speak, associate, and assemble with others in passing during visitation; to not be subjected to the arbitrary and capricious whims of staff; to not be denied his right under state law to establish and maintain family and **community** relationships within CDCr visitation rooms; to not be retaliated against for the lawful exercise of protected rights by him and/or his mother; to not be deprived of protected privileges, liberty, and related

51

immunities without Due Process; to not be denied Equal Protection of law; to be free from intentional and negligent infliction of mental anguish and emotional distress; and to not be treated with such callous, reckless, and deliberate indifference toward the secured rights he has under the Constitution, statutes, and regulations of the United States and of the State of California.

### Claim 21

DEFENDANTS EVANS, GRANNIS, MANUEL, NUCKLES, TILTON, AND WATSON VIOLATED PLAINTIFF'S RIGHTS UNDER STATE LAW AND THE U.S. CONSTITUTION'S FOURTH, EIGHTH, AND FOURTEENTH AMENDMENTS BY CAUSING AND/OR ALLOWING PLAINTIFF TO SUFFER DENIAL OF ADEQUATE WARMTH THROUGH DENIAL OF AUTHORIZED CLOTHING AT VISITS FOR NO VALID REASON SERVING A LEGITIMATE PENOLOGICAL OBJECTIVE.

149. Plaintiff restates and incorporates by reference inclusively the foregoing paragraphs numbered 139-148.

150. SVSP is located right next to the central coast of California, where winter temperatures are cold, often dip below freezing even during the day, and are frequently accompanied by icy rain and windy conditions.

151. Visitation at SVSP occurs in large open rooms that have $2\frac{1}{2}$ concrete walls and a wall and a half consisting entirely of glass window panes. Because both glass and concrete have an insulation factor that is practically zero, the visitation rooms at SVSP are frequently cold and damp during the months of October to May.

152. Accordingly, the CDCr allows the outside visitors of prisoners to wear sweaters, jackets, thermal underclothing, hats, and gloves to and during visits if they so desire.

153. 15CCR § 3030(b) states that each CDCr male prisoner shall be issued blue denim jeans, blue chambray shirts, undershirts, socks, undershorts, a blue denim jacket, a web belt, and whatever protective and/or extra clothing is required by the climate.

154. As for prisoners who receive visits in CDCr visitation rooms, DOM §

1 54020.21.1 specifically states that CDCr prisoners are permitted to wear one
2 each of the following items of clothing issued to them by the CDCr: shirt, pair
3 of pants, belt, **jacket**, pair of socks, pair of shoes, and undergarments.

4     155. Despite the governing regulations above, however, SVSP staff
5 arbitrarily and capriciously refuse to let Plaintiff and other prisoners who get
6 visits wear the single-layered blue denim jackets they are issued. This causes
7 Plaintiff and other prisoners to become cold and otherwise uncomfortable during
8 visits, without any means whatsoever to regulate their body temperatures.

9     156. Although defendants EVANS, GRANNIS, MANUEL, NUCKLES, TILTON, and
10 WATSON have personally been informed by Plaintiff and/or were otherwise made
11 aware of the above events and circumstances, each defendant failed and/or
12 refused to take appropriate corrective action on Plaintiff's behalf despite
13 possessing sufficient rank, responsibility, and opportunity to do so.

14     157. Thus the named defendants personally participated in causing and/or
15 allowing Plaintiff to suffer violation(s) of at least his following
16 constitutional right(s): to not be subjected to unreasonable seizure of
17 authorized property just prior to entering the visitation room; to not be denied
18 the extra and/or protective clothing required by the climate that he is entitled
19 under state law to possess and wear while incarcerated; to not be subjected to
20 cruel and unusual punishment; to not be subjected to the arbitrary and
21 capricious whims of staff; to have CDCr personnel follow CDCr regulations; to
22 not be deprived of authorized property (clothing), protected liberty, and
23 related privileges and immunities without Due Process; to not be denied Equal
24 Protection of law; to be free from intentional and negligent infliction of
25 mental anguish and emotional distress; and to not be treated with such callous,
26 reckless, and deliberate indifference toward the secured rights he has under the
27 Constitution, statutes, and regulations of the United States and of the State of
28 California.

1

2

3

4

5

6

7

8

### Claim 22

DEFENDANTS ARCEO, EVANS, GRANNIS, JONES, KNAPP, MEDINA, MELVIN, NEGRON, NEOTTI, ROJAS, SULLIVAN, THOMAS-2, AND VARIZ VIOLATED PLAINTIFF'S RIGHTS UNDER STATE LAW, THE REHABILITATION ACT, THE AMERICANS WITH DISABILITIES ACT, THE ARMSTRONG REMEDIAL PLAN, AND THE U.S. CONSTITUTION'S FIRST, FOURTH, EIGHTH, AND FOURTEENTH AMENDMENTS BY CAUSING AND/OR ALLOWING PLAINTIF'S REQUESTS FOR REASONABLE AND NECESSARY DISABILITY ACCOMMODATIONS TO BE PROCESSED, REJECTED, REVIEWED, DENIED, EXCESSIVELY DELAYED, AND OTHERWISE MISHANDLED AND OBSTRUCTED IN VIOLATION OF THE CDCr'S ESTABLISHED DISABILITY GRIEVANCE PROCEDURES FOR NO VALID REASON SERVING A LEGITIMATE PENOLOGICAL OBJECTIVE.

9

10

11

12

13

14

158. The CDCr has several established grievance procedures whereby disabled prisoners such as Plaintiff are to request reasonable and necessary accommodations of their various physical and mental impairments. Such procedures are set forth at 15CCR § 3084 et seq. and 3085, DOM § 54100.32 et seq., and the current Remedial Plan (rev. 1/3/01) in the controlling case of Armstrong v. Davis (N.D. Cal.) C94-2307 CW.

15

16

17

18

19

20

21

22

159. After Plaintiff properly submitted the CDCr forms 1824 that sought the reasonable and necessary disability accommodations previously discussed herein at Claims 3, 4, 8, 17, and 18, defendants ARCEO, EVANS, GRANNIS, JONES, KNAPP, MEDINA, MELVIN, NEGRON, NEOTTI, ROJAS, SULLIVAN, THOMAS-2, and VARIZ caused and/or allowed those CDCr 1824 request forms to be arbitrarily and capriciously mishandled, rejected, denied, excessively delayed, and otherwise obstructed in violation of the CDCr's established disability grievance procedures above.

23

24

25

26

27

28

160. Although defendants ARCEO, EVANS, GRANNIS, JONES, KNAPP, MEDINA, MELVIN, NEGRON, NEOTTI, ROJAS, SULLIVAN, THOMAS-2, and VARIZ were personally informed by Plaintiff and/or were otherwise made aware that the above CDCr forms 1824 had been arbitrarily and capriciously mishandled, rejected, reviewed, denied, excessively delayed, and otherwise obstructed in violation of the CDCr's established disability grievance procedures above, each defendant failed and/or

54

1  refused to take appropriate corrective action on Plaintiff's behalf despite
2  possessing sufficient rank, responsibility, and opportunity to do so.

3      161. Thus the named defendants personally participated in causing and/or
4  allowing  Plaintiff  to  suffer  violation(s)  of  at  least  his  following
5  constitutional right(s): to petition the government for a redress of grievances
6  and be afforded meaningful and unimpeded court access pursuant to and in
7  accordance with the CDCr's established grievance procedures; to not be subjected
8  to the arbitrary and capricious whims of staff; to have CDCr personnel follow
9  CDCr regulations and established grievance procedures; to not suffer retaliatory
10  action for exercising protected rights; to have his requests for reasonable and
11  necessary  disability  accommodations  **not**  be  arbitrarily  and  capriciously
12  processed,  rejected,  reviewed,  denied,  excessively  delayed,  or  otherwise
13  obstructed in violation of the CDCr's established grievance procedures; to not
14  be deprived of protected liberty, privileges, and immunities without Due
15  Process; to not be denied Equal Protection of law; to be free from intentional
16  and negligent infliction of mental anguish and emotional distress; and to not be
17  treated with such callous, reckless, and deliberate indifference toward the
18  secured rights he has under the Constitution, statutes, and regulations of the
19  United States and of the State of California.

20                                **Claim 23**

21          DEFENDANTS  ARCEO,  BALLESSA,  BENNETT,  CAPLAN,  EVANS,
            GRANNIS,  HALL,  HEDGPETH,  JONES,  KNAPP,  LEE-1,  LOPEZ,
22          MANUEL,  MEDINA,  MELVIN,  NEGRON,  NEOTTI,  PENNINGTON,
            PIMENTAL,  READ,  ROJAS,  SALAZAR,  SULLIVAN,  THOMAS-2,
23          VARIZ,  WALL,  AND  WOODFORD  VIOLATED  PLAINTIFF'S  RIGHTS
            UNDER  STATE  LAW  AND  THE  U.S.  CONSTITUTION'S  FIRST,
24          FOURTH,  EIGHTH,  AND  FOURTEENTH  AMENDMENTS  BY  CAUSING
            AND/OR ALLOWING PLAINTIFF'S ADMINISTRATIVE GRIEVANCES TO
25          BE  PROCESSED,  REJECTED,  REVIEWED,  EXCESSIVELY  DELAYED,
            AND  OTHERWISE  OBSTRUCTED  IN  VIOLATION  OF  THE  CDCr'S
26          ESTABLISHED ADMINISTRATIVE GRIEVANCE PROCEDURES FOR NO
            VALID REASON SERVING A LEGITIMATE PENOLOGICAL OBJECTIVE.

27

28      162. The CDCr's established grievance procedures, whereby California

                                55

1   state prisoners must seek relief through available administrative remedies prior
2   to seeking judicial intervention, are set forth at 15CCR § 3084 et. seq. and DOM
3   § 54100 et. seq.

4   163. After  Plaintiff  properly  submitted  CDCr  forms  602  seeking
5   appropriate redress of the various grievances set forth herein at Claims 1-3, 5,
6   7-11, and 13-22, defendants ARCEO, BALLESSA, BENNETT, CAPLAN, EVANS, GRANNIS,
7   HALL, HEDGPETH, JONES, KNAPP, LEE-1, LOPEZ, MANUEL, MEDINA, MELVIN, NEGRON,
8   NEOTTI, PENNINGTON, PIMENTAL, READ, ROJAS, SALAZAR, SULLIVAN, THOMAS-2, VARIZ,
9   WALL, and WOODFORD caused and/or allowed the CDCr form 602 administrative
10  grievances to be arbitrarily and capriciously processed, rejected, reviewed,
11  excessively delayed, and otherwise obstructed in violation of the CDCr's
12  established grievance procedures above.

13  164. Although defendants ARCEO, BALLESSA, BENNETT, CAPLAN, EVANS,
14  GRANNIS, HALL, HEDGPETH, JONES, KNAPP, LEE-1, LOPEZ, MANUEL, MEDINA, MELVIN,
15  NEGRON, NEOTTI, PENNINGTON, PIMENTAL, READ, ROJAS, SALAZAR, SULLIVAN, THOMAS-2,
16  VARIZ, WALL, and WOODFORD were personally informed by Plaintiff and/or were
17  otherwise made aware that the above administrative grievances had been
18  arbitrarily and capriciously processed, rejected, reviewed, excessively delayed,
19  and otherwise obstructed in violation of the CDCr's established grievance
20  procedures, each defendant failed and/or refused to take appropriate corrective
21  action on Plaintiff's behalf despite possessing sufficient rank, responsibility,
22  and opportunity to do so.

23  165. Thus the named defendants personally participated in causing and/or
24  allowing  Plaintiff  to  suffer  violation(s)  of  at  least  his  following
25  constitutional right(s): to petition the government for a redress of grievances
26  and be afforded meaningful and unimpeded court access pursuant to and in
27  accordance with the CDCr's established grievance procedures; to not be subjected
28  to the arbitrary and capricious whims of staff; to have CDCr personnel follow

1  CDCr regulations and established grievance procedures; to not suffer retaliatory
2  action for exercising protected rights; to not be deprived of protected liberty,
3  privileges, and immunities without Due Process; to not be denied Equal
4  Protection of law; to be free from intentional and negligent infliction of
5  mental anguish and emotional distress; and to not be treated with such callous,
6  reckless, and deliberate indifference toward the secured rights he has under the
7  Constitution, statutes, and regulations of the United States and of the State of
8  California.

9                                  V.

10                          PRAYER FOR RELIEF

11         WHEREFORE, because Plaintiff has no plain, adequate, or complete remedy
12  at law whereby the wrongs described herein can be sufficiently redressed, and
13  because Plaintiff has been and will continue to be irreparably injured by the
14  conduct of defendants as described herein unless the Court grants appropriate
15  relief in this matter, Plaintiff respectfully prays the Court will enter
16  judgment granting Plaintiff the following relief for each separate Claim
17  numbered 1 through 23 herein:

18         1.  A declaration that defendants' acts and omissions as described
19  herein violated Plaintiff's rights under the Constitution and laws of the United
20  States and of the State of California;

21         2.  A narrowly tailored injunction that orders involved defendants to
22  do and/or stop doing whatever the Court deems best suited to the needs and
23  interests of bringing about a fair and equitable resolution to each separate
24  Claim and this entire matter;

25         3.  A fair and just award of money damages against defendants, jointly
26  and severally, that includes appropriate compensatory damages, general damages,
27  special damages, punitive damages, exemplary damages, and Plaintiff's costs in
28  this action;

4.    A jury trial on all disputed issues of fact between Plaintiff and defendants;

5.    Any additional relief the Court deems just, proper, and equitable.

DATED:    January 21, 2008

Respectfully submitted,

ERIC CHARLES RODNEY K'nAPP
Plaintiff, In Pro Per

**VI.**

VERIFICATION

I, Eric Charles Rodney K'nAPP, swear under penalty of perjury that all of my factual assertions in the foregoing Civil Rights Complaint are true and accurately reflect my personal knowledge, belief, and received information.

Executed this 21st day of January, 2008, at Soledad, California.

ERIC CHARLES RODNEY K'nAPP

///
///
///
///
///
///
///
///
///
///

58

TABLE SHOWING PLAINTIFF'S PURSUIT OF ADMINISTRATIVE REMEDIES REGARDING THIS COMPLAINT

| Claim | Appeal Log No. | Informal Response | | 1st Formal Response | | 2nd Formal Response | | 3rd Formal Response | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | SVSP B05 4464 | Denied | 11/7/05 | Withdrawn 12/6/05 after/because reviewing staff gave Plaintiff the first set of taken UNION material. | | | | | |
| | SVSP B05 4800 | Denied | 12/8/05 | Denied | 12/23/05 | Denied | 2/3/06 | Prtl Grnt | 7/5/06 |
| | SVSP B06 3619 | Prtl Grnt | 10/31/06 | Prtl Grnt | 1/8/07 | Withdrawn for fear of retaliation on 2/9/06, at "request" of defendant CDCr reviewing personnel. | | | |
| 2 | SVSP B06 4640 | Bypassed | | Granted | 12/19/05 | | | | |
| | SVSP B06 1103 | Prtl Grnt | 3/21/06 | Granted | 4/30/06 | Granted | 8/10/06 | Plaintiff sought but defendant CDCr personnel prevented this review. | |
| 3 | SVSP B06 1093 | Bypassed | | Plaintiff sought but defendant CDCr personnel prevented this/further review. | | | | | |
| | SVSP B06 1390 | Bypassed | | Denied | 5/26/06 | Plaintiff sought but defendant CDCr personnel prevented this/further review. | | | |
| | Mailed 7/21/06 | Plaintiff sought but defendant CDCr personnel prevented this/further review. | | | | | | | |
| 4 | SVSP B06 0741 | Prtl Grnt | 3/23/06 | | | | | | |
| 5 | Mailed 3/2/06 | Bypassed per CDCr grievance procedure. | | Plaintiff sought but defendant CDCr personnel prevented this/further review. | | | | | |
| 6 | SVSP B06 3044 | Prtl Grnt | 9/27/06 | Withdrawn for fear of retaliation on 10/31/07 at "request" of defendant CDCr reviewing personnel. | | | | | |
| 7 | SVSP B06 3098 | Bypassed | | Prtl Grnt | 11/28/06 | Prtl Grnt | 1/11/07 | | |
| 8 | SVSP B06 2023 | Bypassed | | Bypassed | | Denied | 8/17/06 | Denied | 11/15/06 |
| | SVSP B06 3740 | Prtl Grnt | 11/7/06 | Granted | 1/19/07 | Granted | 3/27/07 | | |

PLAINTIFF'S PURSUIT OF ADMINISTRATIVE REMEDIES (Cont.)

| Claim | Appeal Log No. | Informal Response | | 1st Formal Response | | 2nd Formal Response | | 3rd Formal Response | |
|-------|----------------|-------------------|---|--------------------|---|--------------------|---|--------------------|---|
| 9 | SVSP B07 0861 | Bypassed | | Bypassed | | Prtl Grnt | 4/16/07 | Denied | 7/18/07 |
| | SVSP B07 2968 (Duplicative of above 07 0861.) | Bypassed | | Denied | 9/21/07 | Prtl Grnt | 10/25/07 | Currently pending after obstructive delay by defendant CDCr personnel. | |
| | SVSP B07 4484 (Duplicative of above 07 0861.) | Bypassed | | Prtl Grnt | 10/25/07 | Currently pending after obstructive delay by defendant CDCr personnel. | | | |
| | SVSP B08 0004 (Duplicative of above 07 0861.) | Bypassed | | Currently Pending. | | | | | |
| 10 | Mailed 8/23/06 | Plaintiff sought but defendant CDCr personnel prevented this/further review. | | | | | | | |
| 11 | SVSP B07 0056 | Granted | 12/18/06 | Withdrawn for fear of retaliation on 2/5/07 at "request" of defendant CDCr reviewing personnel. | | | | | |
| 12 | LAC B04 0697 | Granted | 3/17/04 | Denied | 4/23/04 | Denied | 7/13/04 | Denied | 10/14/04 |
| | SVSP B06 3612 | Bypassed | | Denied | 12/28/06 | Denied | 1/18/07 | Denied | 4/26/07 |
| 13 | SVSP B06 3550 | Bypassed | | Granted | 1/4/07 | | | | |
| | SVSP B07 1974 | Bypassed | | Prtl Grnt | 6/14/07 | Prtl Grnt | 7/23/07 | Denied | 10/28/07 |
| 14 | SVSP B06 3860 | Bypassed | | Denied | 2/2/07 | Prtl Grnt | 3/8/07 | Denied | 5/21/07 |
| | SVSP B07 0046 | Bypassed | | Withdrawn for fear of retaliation on 1/31/07 at "request" of defendant CDCr reviewing personnel. | | | | | |
| | SVSP B07 0405 | Bypassed | | Bypassed | | Denied | 4/11/07 | Unavailable review level per 15CCR § 3084.7(b)(1). | |
| 15 | SVSP B07 0379 | Bypassed | | Withdrawn for fear of retaliation on 2/2/07 at "request" of defendant CDCr reviewing personnel. | | | | | |
| | SVSP B07 0194 (Admin. grvance by other prisoner similarly situated.) | Bypassed | | Denied | 4/2/07 | Prisoner sought but defendant CDCr personnel prevented this/further review. | | | |

PLAINTIFF'S PURSUIT OF ADMINISTRATIVE REMEDIES (Cont.)

| Claim | Appeal Log No. | Informal Response | | 1st Formal Response | | 2nd Formal Response | | 3rd Formal Response | |
|-------|----------------|-------------------|--|---------------------|--|---------------------|--|---------------------|--|
| 16 | SVSP B07 0210 | Bypassed | | Granted | 1/22/07 | | | | |
| 17 | SVSP B07 1003 | Bypassed | | Prtl Grant | 4/4/07 | Prtl Grnt | 5/14/07 | Denied | 9/6/07 |
| 18 | SVSP B07 1543 | Bypassed | | Denied | 5/15/07 | Prtl Grnt | 6/14/07 | Denied | 10/11/07 |
| 19 | SVSP B07 1932 | Bypassed | | Prtl Grnt | 5/23/07 | Prtl Grnt | 6/28/07 | Denied | 12/7/07 |
| | SVSP B07 5388 | Bypassed | | Withdrawn for fear of retaliation on 1/14/08 at "request" of defendant CDCr reviewing personnel. | | | | | |
| | SVSP B08 0273 | Bypassed | | Currently pending after obstructive delay by defendant CDCr personnel. | | | | | |
| 20 | SAC V04 0038 | Prtl Grnt | 12/21/03 | Denied | 2/24/04 | Plaintiff sought but defendant CDCr personnel prevented this review. | | | |
| | SAC L03 2792 (Concerning the obstruction of SAC V04 0038.) | Prtl Grnt | 11/26/03 | Plaintiff sought but defendant CDCr personnel prevented this/further review. | | | | | |
| 21 | SAC V04 0201 | Bypassed | | Bypassed | | Denied | 3/8/04 | Denied | 6/22/04 |
| 22 | Mailed  5/30/07 | Plaintiff sought but defendant CDCr personnel prevented this/further review. | | | | | | | |

Plaintiff also documented and reported to defendant CDCr reviewers each obstruction of the CDCr form 1824s at issue in Claim 22, but within the CDCr forms 1824 themselves in expressing dissatisfaction with each one's lower-level responses.

| 23 | Mailed   1/9/08 | Bypassed | | Withdrawn for fear of retaliation on 1/15/08 at "request" of defendant CDCr subject of grievance. | | | | | |

Plaintiff also extensively documented and reported to defendant CDCr personnel each of the grievance obstructions at issue in Claim 23, including within the grievances themselves when submitting his written dissatisfaction with each one's lower-level responses.

-o0o-

DECLARED PROOF OF FILING AND/OR SERVICE BY UNITED STATES MAIL

Case Name: **K'nAPP v. Tilton, et al.**;  Case No.: [Not yet assigned.]

I, Eric K'nAPP, "Plaintiff" in the above-titled action, declare under penalty of perjury that by doing the following in accordance with the Prison Mailbox Rule I filed/served the accompanying:

**CIVIL RIGHTS COMPLAINT BY A PRISONER FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND MONETARY DAMAGES.**

1. I put the original and one copy of the above document inside an envelope addressed to the Clerk of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102-3483;

2. I presented the above-addressed envelope(s) to a Salinas Valley State Prison correctional officer, who took possession thereof for processing in accordance with prison mail procedures.

Executed this $22^{d}$ day of January, 2008, at Soledad, California.

ERIC CHARLES RODNEY K'nAPP